Timothy CARR

v.

Valerie PRADER.

No. 98–170–Appeal.

Supreme Court of Rhode Island.

Feb. 9, 1999.

**292**

John W. Grisham, Middletown, for Plaintiff.

Robert M. Sabel, Newport, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes to the Court as a certified question from the Superior Court in accordance with G.L.1956 § 9-24-27. The Superior Court asks us to consider for the first time whether the municipal probate courts possess the jurisdiction to entertain a guardianship petition opposed by a minor child's surviving parent.

The essential facts of this case are undisputed. Heidi and Timothy (Carr) wed on September 23, 1989, and had a tempestuous marriage, characterized by several separations. The union produced two sons, Jonathan Kyle Carr (Jonathan), born on March 24, 1990, and Jamie Woodrow Carr (Jamie), born on June 6, 1991. The family resided in the Spotsylvania, Virginia area from 1989 until March 1995, when Heidi left with the children and relocated to Newport, Rhode Island. She eventually gained sole custody of the children by order of the Juvenile and Domestic Relations Court of Spotsylvania County, Virginia on September 19, 1995, and later by a July 17, 1996, restraining order issued by the Rhode Island Family Court.

In the summer of 1996, Heidi was diagnosed with terminal cancer. Prior to her last hospitalization, Heidi placed Jamie with her cousin, Valerie Prader (Valerie), in Newport, while Jonathan went to live in Massachusetts with Heidi's cousin, Gina Prader. Jonathan presently resides with Heidi's mother, Laurie Tabor, and his custody is not part of this litigation. Heidi succumbed to her illness and died on January 18, 1997.

Thereafter, Valerie Prader filed a miscellaneous emergency petition for temporary custody of Jamie, which was granted by the Family Court ex parte. Valerie then filed a petition for guardianship of Jamie in the Probate Court of the City of Newport. Carr moved to dismiss the petition for lack of jurisdiction, arguing that the Probate Court lacked the authority to award permanent guardianship of a minor child over the opposition of a surviving parent. Carr further argued that Family Court was the more appropriate forum for the dispute.

The Probate Court denied the motion to dismiss by order dated August 1, 1997, and an appeal was taken to the Superior Court. Pending final decision of the jurisdictional issue, the Probate Court entered a consent order which stayed further proceedings and allowed Valerie to retain temporary custody of Jamie. The Superior Court heard argument concerning the jurisdictional issue on December 18, 1997. As a result, that court propounded the following questions of law to us:

"1. Does the probate court have jurisdiction to appoint a guardian of the person and estate of a six year old minor child who is not orphaned and who has a surviving natural parent whose parental rights have never been terminated but whose fitness to serve as the minor's guardian has been raised in the probate proceedings?

"2. Does the probate court have jurisdiction to appoint a guardian, either temporary or permanent, of the person and estate of a six year old minor in a contest between the cousin of the deceased mother and the surviving natural father under the following facts:

"a. at the time of her death, the natural mother was separated from, but legally married to the natural father;

"b. prior to her death, the natural mother had been awarded sole custody of the minor [by] family court orders in Virginia and Rhode Island, and at the time of her death, she had sole custody of the minor;

"c. the surviving natural father's parental rights have never been terminated but his fitness to serve as guardian of the child has been raised by the petitioner in the probate proceedings;

"d. after the death of the natural mother, the Rhode Island Family Court awarded temporary sole custody of the minor child to said cousin of the deceased mother, but has held further hearings in abeyance pending disposition of the subject Probate Court Petition filed by the cousin for guardianship of the minor?"

■ We now respond to the certified questions. When Valerie petitioned the Probate Court of the City of Newport for guard-

ianship of Jamie, she implicitly asked that court to terminate Carr's natural guardianship and custody of Jamie. *See In re Kimberly and James,* 583 A.2d 877, 878 (R.I. 1990) ("permanent custody [is] deemed an incident of guardianship"). "[P]arents are the natural guardians of their children," *Petition of Loudin,* 101 R.I. 35, 38, 219 A.2d 915, 917 (1966), and "on the death of a parent to whom such custody has been awarded, the right to custody automatically reverts to the surviving spouse." *Id.* at 39, 219 A.2d at 918. *See also Mowry v. Smith,* 82 R.I. 82, 85, 105 A.2d 815, 817 (1954). Therefore, at Heidi's death, custody of Jamie automatically reverted to Carr. If the Probate Court of the city of Newport were to grant Valerie's petition for guardianship, it would divest Carr of his custody rights to his son Jamie.

Therefore, the dispositive question is whether probate courts have the power to terminate a parent's natural guardianship and concomitant custody rights.

■ In Rhode Island, probate courts are "of special and limited jurisdiction *** exercis[ing] *** jurisdiction only in a manner and to the extent conferred by statute." *Harrop v. Tillinghast,* 59 R.I. 255, 258, 195 A. 226, 228 (1937). General Laws 1956 § 33–15.1–4 grants probate courts the "power to appoint or approve guardians *** of the person or estate of minors who shall reside, or have a legal settlement in the city or town, and of the estate within the city or town." While having been authorized to appoint guardians, probate courts lack the express authority to terminate parental rights or divest parents of the custody of their children.

■ The Family Court is likewise "a statutory tribunal possessing only such jurisdiction as was explicitly conferred upon it by the Legislature," *Fox v. Fox,* 115 R.I. 593, 596, 350 A.2d 602, 603 (1976), but is vested with the power to terminate parental rights, G.L.1956 § 15–7–7, and award custody of an abused, delinquent, wayward, neglected, or dependant child to any suitable person or agency. G.L.1956 § 14–1–32 and G.L.1956 § 40–11–12. However, the Family Court may only terminate parental rights or custody in limited statutorily-dictated circum-

stances. *See* § 15–7–7 (parental rights may be terminated only upon a showing of, *inter alia,* willful neglect, abandonment, desertion, or parental unfitness demonstrated by "cruel or abusive nature" or "chronic substance abuse"); *see also* § 14–1–32 (court may place delinquent, wayward, neglected, or dependant child in custody of appropriate person or agency); § 40–11–12 (child may be placed in custody of the Department of Children, Youth, and Families upon a showing of abuse or neglect).

The laws of Rhode Island express a preference for keeping children with their parents. "The public policy of this state is *** to strengthen the family." Section 40–11–1. The Family Court Act seeks to secure for children "such care, guidance, and control, preferably in his or her own home" and "[t]o conserve and strengthen the child's family ties wherever possible, removing him [the child] from the custody of his [or her] parents only when his or her welfare *** cannot be adequately safeguarded." Section 14–1–2.

■ If the Family Court makes a finding of neglect or abuse, the court can either place the child back in his or her home under Department of Children, Youth, and Families (DCYF) supervision or grant custody to DCYF "until such time as it finds that the child may be returned to the parents *** under circumstances consistent with the child's safety." Section 40–11–12(b). The statute allows the court to require the parent to undergo "counseling, including psychiatric evaluation and/or treatment as a prerequisite to the return of the child to his or her custody." *Id.* Within twelve months after the child has been placed in DCYF's care, the court will review, *inter alia,* "[t]he appropriateness of the department's plan for service to the child and parent" along with

"[w]hat services have been offered to strengthen and reunite the family," and only "[w]here return home *** is not likely" are alternative modes of care considered. Section 40–11–12.1. Unless the court finds egregious behavior on the parent's part, "reasonable efforts shall be made to preserve and unify families." Section 40–11–12.2(c).[1] The Family Court may not grant a petition for guardianship unless: (1) the parents previously having custody have consented in writing, § 40–11–12(b), or (2) had their parental rights terminated, § 15–7–7. Furthermore, minimum due process requires clear and convincing evidence of unfitness before parental rights may be terminated. *Santosky v. Kramer,* 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599, 617 (1982). *See also* § 15–7–7; *In re Jonathan,* 415 A.2d 1036, 1039 (R.I.1980).

■ With this background, it seems clear to us that a parent only can lose guardianship or custody in this context if that parent has acted in a way deleterious to his or her child's well-being. As we said in *Mowry v. Smith,* "[n]o one who had the actual custody *** could assume therefrom a legal right in herself to be appointed the guardian by any court *** unless [the parent] was first judicially found to be unfit to have custody as her natural guardian." 82 R.I. at 87–88, 105 A.2d at 818. Only the Family Court has the statutory power to make such findings of parental unfitness. Moreover, the Family Court possesses the particularized expertise and resources that make it well suited for this task. It is able to marshal the "department of children, youth, and families, the department of health, the department of human services, the department of education, the office of substance abuse, and the department of mental health, retardation, and hos-

---

1. General Laws 1956 § 40–11–12.2(e) provides in pertinent part:

"Reasonable efforts *** shall not be required to be made with respect to a parent of a child if the court has determined that:

(i) The parent has subjected any child to conduct of a cruel or abusive nature;

(ii) The parent has:

(I) Committed murder of another child of the parent; or

(II) Subjected the child to aggravating circumstances, which circumstances shall be aban-

donment, torture, chronic abuse and sexual abuse[;]

(III) Committed voluntary manslaughter of another child of the parent; or

(IV) Aided or abetted, attempted, conspired, or solicited to commit such a murder or such a voluntary manslaughter; or

(V) Committed a felony assault that results in serious bodily injury to the child or another child of the parent; or

(iii) The parental rights of the parent to a sibling have been terminated involuntarily."

pitals, to render all assistance \*\*\* within \*\*\* its jurisdictional power" to aid the court. G.L.1956 § 14–1–59. Similarly, the court can order physical and mental examinations, Section 14–1–51, and hears matters exclusively dealing with families and children. *See* G.L. 1956 § 8–10–3 and § 14–1–5. A municipal probate court, expert in administering estates, lacks the experience and resources of the Family Court to determine questions of parental fitness.

 Municipal probate courts are also without the power to terminate parental rights or divest parents of custody. Valerie argues that this power is implicit in § 33–15.1–1. That statute in its pertinent part reads:

"[t]he father and mother shall be the joint natural guardians of their minor children \*\*\*. Provided, however, this section \*\*\* shall not affect the right of the probate court duly to appoint a legal guardian \*\*\* of the person or estate of any minor children \*\*\* in which event the appointment of the probate court \*\*\* shall supersede the natural guardianship insofar as the same shall be inconsistent with the appointment \*\*\*." *Id.*

While it is true that municipal probate courts may appoint guardians superseding natural guardianship, they may appoint a permanent guardian only, if at all, after the Family Court has terminated the parental rights of the surviving parent (found a parent unfit). To read the statute more broadly would allow municipal probate courts unfettered discretion in awarding guardianships in contravention of parental custody. This construction seems inappropriate given the detailed statutory regulation of Family Court decision-making on these identical issues. Indeed, such a construction would allow a municipal probate court to circumvent the Family Court's mandatory requirement of a finding of parental unfitness before a parent is stripped of guardianship or custody. This outcome would defeat the Legislature's preference for keeping families intact whenever

possible and raise serious constitutional issues. *See Santosky,* 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617. Therefore, we hold that only the Family Court may terminate parental rights or divest a parent of custody.

 Based on this conclusion, we now address how one may seek guardianship of a minor child over the objection of that child's surviving parent. The Family Court has the power to grant a guardianship over the person of a minor child, but only with either "the written consent of the parent or parents previously having custody of the child and of the department of children, youth and families," § 40–11–12(b), or the termination of surviving parent's parental rights, obviating any need for that person's consent. A person seeking guardianship of the person *and the estate* must necessarily petition the Probate Court, as the Family Court enjoys the power to appoint only guardians of the person. *Compare* § 33–15.1–4 ("The probate court \*\*\* shall have the power to appoint or approve guardians of the persons and estates.") *with* § 40–11–12 (Family Court "shall have the power to appoint a guardian of the person of the child."). Of course, the Probate Court may only appoint such a guardian after the Family Court has terminated the objecting parent's parental rights. Consequently, we answer the certified questions as follows.

1. The Probate Court does not have jurisdiction to appoint a permanent guardian of the *person and estate* of a six-year old minor child who is not orphaned and who has a surviving natural parent whose parental rights have never been terminated and who opposes said petition.

2. The Probate Court in such circumstances may appoint a temporary guardian who may file a petition in the Family Court either for custody[2] or for the termination of parental rights of the surviving parent on the ground of unfitness.

**2.** While a temporary guardian could petition for custody, the grant of such a petition would be of limited utility in the instant case, where Valerie seeks guardianship. Even if the Family Court named Valerie custodian, that court would make

efforts to reunify the surviving parent and the child, *e.g.,* §§ 40–11–1, –2, –12 and –12.2, and would have to hear and grant a petition to terminate the objecting parent's parental rights before Valerie could be appointed guardian.

3. The Family Court, pursuant to a petition for termination of parental rights, in its discretion may terminate parental rights or find that the child is dependent and neglected pursuant to § 14–1–32 and award the temporary guardian custody. This award may eventuate in the reunification of the surviving parent and child or the termination of the surviving parent's parental rights. During the pendency of the matter prior to the termination of parental rights, the Family Court should pursue efforts to unify the parent and child as required by statute. *E.g.,* § 40–11–1, –2, – 12 and –12.2.

4. In the event that the surviving parent's parental rights are terminated, the Family Court may entertain a petition by the temporary guardian for adoption of the child.

5. In the event that the temporary guardian does not wish to file a petition for adoption upon termination of the surviving parent's parental rights, that person has two choices:

(a) he or she may file a petition in the Family Court to be named permanent guardian of the person of the minor child pursuant to § 40–11–12, or;

(b) he or she may file a petition in the Probate Court to seek appointment as a permanent guardian of the person *and estate* of the minor child pursuant to §§ 33–15.1–4 and –5.[3]

Our decision in this case is limited to those circumstances in which a guardianship petition is opposed by a parent, because in such a case, the court potentially may divest a parent of his or her custody rights. This decision does not disturb our precedents regarding municipal probate courts' power to decide the guardianship of orphans or of minors who do not have objecting parents, as such cases do not implicate the parental rights of guardianship and custody. *See In re Kimberly and James,* 583 A.2d 877 (R.I.1990);

*Petition of Loudin,* 101 R.I. 35, 219 A.2d 915 (1966).

 In sum, we hold that municipal probate courts lack the jurisdiction to decide petitions for guardianship opposed by a parent. Such a petition may not be decided without the participation of the Family Court, which alone has the express statutory power to divest a parent of custody and/or parental rights along with the expertise and resources essential to exercise such power. We do not express an opinion on the underlying merits of the instant case, but rather only conclude that the Family Court is the appropriate tribunal to adjudicate such issues.

---

**3.** The Probate Court may grant such a petition relying on the findings of the Family Court to terminate the rights of the natural parent. The permanent guardianship will continue until the child reaches the age of majority or until the guardian resigns from said appointment, in which case a new guardian would be appointed

to replace the original guardian. The Probate Court always retains the power to remove a guardian for cause. The Family Court's determination of the unfitness of the parent or the neglect and dependency of the child will be binding on the Probate Court and need not be redetermined independently.