2002 UT App 50

STATE of Utah, Plaintiff and Appellee,

v.

Richard Jaime YANEZ, Defendant
and Appellant.

No. 20010087–CA.

Court of Appeals of Utah.

Feb. 22, 2002.

Catherine E. Lilly, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Kris C. Leonard, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, ORME, and THORNE, Jr.

## OPINION

BENCH, Judge:

¶ 1 Defendant Richard Jaime Yanez appeals his convictions for discharge of a firearm from a vehicle, witness tampering, and possession of a firearm by a restricted person. We affirm.

## BACKGROUND [1]

¶ 2 On May 9, 2000, while driving to work, Robert Maestas observed a young man, later identified as Defendant, crouched down by a bridge. Mr. Maestas also saw an empty, gold-colored Honda idling next to the bridge. Thinking Defendant needed assistance, Mr. Maestas returned to the bridge where he saw Defendant spraying graffiti on the bridge. As Mr. Maestas approached, Defendant ran to his car, pulled out into the street, made a U-turn, and began following Mr. Maestas.

¶ 3 Mr. Maestas drove home and parked his truck in an alleyway, where it could not be seen from the street. After about fifteen minutes, Mr. Maestas continued to work, taking a different route. At an intersection, Mr. Maestas saw what he thought to be the same gold Honda parked on the street in front of an abandoned house. As he drove past the house, Mr. Maestas saw Defendant emerge from the bushes surrounding the house holding a small caliber handgun in his left hand. Defendant saw Mr. Maestas, dropped the bag he was holding in his right hand, raised his right hand, and pointed his finger at Mr. Maestas. As Mr. Maestas passed, Defendant got into his car and began following Mr. Maestas again.

¶ 4 As Defendant followed him, Mr. Maestas looked in his rearview mirror and saw Defendant with his left arm out the driver's

---

1. "In setting out the facts from the record on appeal, we resolve all conflicts and doubts in favor of the jury's verdict and the rulings of the trial court." *State v. Tolman,* 775 P.2d 422, 422–23 (Utah Ct.App.1989) (quotations and citations omitted).

window pointing a handgun at Mr. Maestas's truck. As the vehicles approached a stop sign, Mr. Maestas heard a pop, which he took to be gunfire. Mr. Maestas immediately dropped down to lay across the bench seat of his truck. From that position, in one of the truck's mirrors, he was able to see the handgun in Defendant's hand recoil twice more, although he does not recall hearing additional gunshots. Defendant then turned his car around and went back the way they had come. As Defendant fled, Mr. Maestas was able to obtain a partial license plate number.

¶ 5 Mr. Maestas immediately drove home and called the police. Mr. Maestas described the incident to the police and identified Defendant from a photo lineup. Mr. Maestas's testimony was corroborated at trial by Matthew Shell, who had been riding his bicycle past the abandoned house when Defendant emerged from the bushes. Mr. Shell also testified to seeing a small, silver handgun in Defendant's hand, saw Defendant point at Mr. Maestas, and heard two "pops" sounding like gunfire from the direction Mr. Maestas and Defendant had driven.

¶ 6 Defendant was located and, upon questioning, admitted to the officer that he had done the graffiti. He denied, however, having a handgun, saying he was only holding a can of spray paint. He also denied having followed Mr. Maestas.

¶ 7 Defendant was tried and ultimately convicted of discharge of a firearm from a vehicle, tampering with a witness, and possession of a dangerous weapon by a restricted person. Defendant now appeals these convictions.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Defendant first argues that the State did not make out its prima facie case of witness tampering because the statute requires that an official investigation already be underway at the time of the offense. "Matters of statutory interpretation present questions of law which we review for correctness, according no particular deference to the trial court's interpretation." *State v. Lindsay*, 2000 UT App 379, ¶ 4, 18 P.3d 504.

¶ 9 Next, Defendant argues that the trial court erred by instructing the jury that it need only find Defendant had a subjective belief that an official investigation was underway to conclude that he committed witness tampering. The issue was not preserved for our review because at trial, Defendant did not object to the instruction. *See State v. Holgate*, 2000 UT 74, ¶ 11, 10 P.3d 346. Defendant argues in the alternative that his trial counsel was ineffective for failing to object to the instruction. "When ... the claim of ineffective assistance is raised for the first time on appeal, we resolve the issue as a matter of law." *State v. Silva*, 2001 UT App 292, ¶ 12, 13 P.3d 604 (quotations and citations omitted).

¶ 10 Defendant also challenges the sufficiency of the evidence to convict him of the three offenses.

We will reverse a jury verdict only when, after viewing the evidence and all inferences draw therefrom in a light most favorable to the verdict, we find that the evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust.

*Id.* at ¶ 13 (quotations and citations omitted).

¶ 11 Finally, Defendant challenges the trial court's ruling that the crimes of witness tampering and discharge of a firearm from a vehicle do not merge. Whether two crimes merge is "essentially an issue of statutory construction that we review for correctness, according no particular deference to the trial court." *State v. Lopez*, 2001 UT App 123, ¶ 9, 24 P.3d 993 (quotations and citation omitted).

## ANALYSIS

### I. Official Investigation

¶ 12 Defendant was charged with witness tampering in violation of Utah Code Ann. § 76–8–508(2)(c) (1999), which provides:

A person is guilty of a third degree felony if he:

. . . .

(c) communicates to a person a threat that a reasonable person would believe to be a

threat to do bodily injury to the person, because of any act performed or to be performed by the person in his capacity as a witness or informant in an official proceeding or investigation.

*Id.* Defendant argues that the trial court erred by not requiring the State to prove, as an essential element of the crime, that an official proceeding or investigation was underway when Defendant communicated a threat to Mr. Maestas. The State counters that the plain language of the statute makes no such requirement.

■ ¶ 13 Generally, "our primary goal in interpreting statutes is to give effect to the legislative intent, as evidenced by the plain language. . . . We need look beyond the plain language only if we find some ambiguity." *State v. Burns,* 2000 UT 56, ¶ 25, 4 P.3d 795 (citation omitted). Defendant contends that the language of subsection 2(c) identifies the person threatened as acting "in his capacity as a witness or informant," not as a potential witness. Utah Code Ann. § 76–8–508(2)(c). Defendant therefore concludes that this omission "implies that an official investigation or proceeding has been instituted against the suspect at the time of the alleged offense."

■ ¶ 14 However, a plain-language reading of a statute requires no implication to divine its meaning. We agree with the State that the plain language of subsection (2)(c) requires proof of neither an actual investigation, nor proof that Defendant believed an investigation was pending. In proscribing a threat to do bodily injury to a person "because of any act *performed or to be performed,*" in their capacity as a witness, subsection (2)(c) is designed to protect past, present, and future witnesses. *Id.* (emphasis added). The plain language of subsection (2)(c) does not limit the criminal act to either the period of time that an investigation is actually underway, or to the period of time a defendant believes an investigation is underway or pending. *Cf.* Utah Code Ann. § 76–8–508(1) (providing criminal penalties for inducing another person to testify falsely, withhold information, etc., where the inducer believes "that an official proceeding or investigation is pending or about to be instituted").

¶ 15 It is clear that the Legislature intended to provide a broad scope of coverage under subsection (2)(c) to enable prosecution of any person who makes a credible threat of bodily harm to another based on that person's status—past, present, or future—as a witness. We thus conclude that the State was not required to prove that an official investigation was underway or that Defendant believed an investigation was pending or about to be instigated to make out its prima facie case.

## II. Jury Instruction

■ ¶ 16 Defendant's next argument is that the trial court improperly instructed the jury in Instruction 11 that the State need not prove that an actual investigation was pending at the time Defendant threatened the witness. Defendant's trial counsel did not object to the instruction, thus the issue was not raised before the trial court. "As a general rule, claims not raised before the trial court may not be raised on appeal." *Holgate,* 2000 UT 74 at ¶ 11, 10 P.3d 346. However, Defendant contends that his trial counsel was ineffective in not objecting to the instruction.

¶ 17 To be successful in his argument, Defendant must prove that his counsel's performance "fell below an objective standard of reasonableness, and that the deficient performance prejudiced the outcome of the trial." *State v. Silva,* 2000 UT App 292, ¶ 22, 13 P.3d 604 (quotations and citations omitted). Since we have concluded that subsection (2)(c) does not require proof of either an actual investigation or Defendant's subjective belief that an investigation is pending or will shortly be instigated, Instruction 11 required the jury to find an additional element not required for conviction, and therefore actually favored Defendant. Thus, any deficiency in trial counsel's performance was not prejudicial to Defendant's case.

## III. Sufficiency of the Evidence

■ ¶ 18 Defendant contends that the State presented insufficient evidence to support his convictions. Defendant's trial coun-

sel did not challenge the sufficiency of the evidence; therefore, the issue is not adequately preserved for our review. *See Holgate,* 2000 UT 74 at ¶ 16, 10 P.3d 346 ("[A]s a general rule, a defendant must raise the sufficiency of the evidence by proper motion or objection to preserve the issue for appeal."). Defendant argues, however, that we may review this issue because his trial counsel was ineffective.

¶ 19 After reviewing the evidence in a light most favorable to the jury's verdict, *see State v. Rudolph,* 2000 UT App 155, ¶ 18, 3 P.3d 192, we conclude that the State presented some evidence "from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). The State established all the elements of the crimes charged through the testimony of Mr. Maestas and Mr. Shell. Defendant's challenge, therefore, goes to the credibility of the witnesses' testimony. "When the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given particular evidence." *State v. Workman,* 852 P.2d 981 (Utah 1993). The jury chose to believe the testimony of Mr. Maestas and Mr. Shell, and we will not second guess its judgment. Therefore, since any objection to the sufficiency of the evidence at trial would have been denied, Defendant's trial counsel was not ineffective for failing to raise it. *See State v. Kelley,* 2000 UT 41, ¶ 26, 1 P.3d 546 ("Failure to raise futile objections does not constitute ineffective assistance of counsel.").

## IV.  Merger of Offenses

¶ 20 Defendant's final argument is that the trial court erred in refusing to merge the offenses of witness tampering and discharge of a firearm. Defendant contends that because the two convictions rested on the same evidence, discharge of a firearm is a lesser included offense of witness tampering.

¶ 21 To identify a lesser included offense, we first must determine if the lesser offense is " 'established by proof of the same or less than all the facts required to establish the commission of the offense charged.' " *State v. Ross,* 951 P.2d 236, 241 (Utah Ct. App.1997) (quoting *State v. Hill,* 674 P.2d 96, 97 (Utah 1983)). If the greater offense "cannot be committed without necessarily having committed the lesser, then the lesser offense merges into the greater crime." *Ross,* 951 P.2d at 241 (quotations and citations omitted). Generally, we look only to the statutory elements of the two crimes in making this determination. *See id.* However, when, as here, "the two crimes have multiple variations, we must look beyond the statutory elements" and compare the evidence. *Id.*

¶ 22 To support Defendant's conviction for witness tampering, the State had to provide evidence that Defendant "communicate[d] to a person a threat that a reasonable person would believe to be a threat to do bodily injury to the person." Utah Code Ann. § 76–8–508(2)(c). To convict Defendant of discharge of a firearm from a vehicle the State had to prove that Defendant "with intent to intimidate or harass another, discharge[d] a firearm in the direction of any vehicle." Utah Code Ann. § 76–10–508(2)(c) (1999). From Mr. Maestas's testimony, it is clear that he felt threatened by Defendant long before Defendant fired the gun in his direction. The first time Defendant followed him, Mr. Maestas felt threatened enough to sit out of sight before continuing to work. The second time Defendant followed Mr. Maestas, he deliberately altered his route with the intention of calling the police from a senior citizen's center because he felt threatened by Defendant after Defendant pointed at him with one hand, while holding a gun in his other hand. Finally, after seeing Defendant's car approach his truck at a high rate of speed, Mr. Maestas testified that he was afraid Defendant was going to run into him. Based on these facts, we conclude that there was evidence other than the discharge of the firearm upon which the jury could base Defendant's conviction for witness tampering. Therefore, the trial court correctly ruled that the two offenses do not merge.

## CONCLUSION

¶ 23 The State was not required to prove that an official investigation was pending or

about to be commenced to make out its prima facie case for witness tampering. The portion of the statute under which Defendant was charged is unambiguous and does not require the State to prove either an actual investigation or Defendant's belief in a pending or imminent investigation. The trial court erred, therefore, in instructing the jury that it needed to consider Defendant's subjective belief as an element of the crime. However, the error actually favored Defendant and resulted in no prejudice to him. Defendant's trial counsel was, therefore, not ineffective in failing to object to the instruction.

¶ 24 Defendant's sufficiency claim was not adequately preserved for our review, and Defendant's trial counsel was not ineffective for failing to raise the issue below because the State presented some evidence as to each element of the charged offenses upon which the jury could base its decision. Finally, Defendant could have committed the offense of witness tampering without necessarily committing the offense of discharge of a firearm from a vehicle. Therefore, the offenses do not merge.

¶ 25 Accordingly, Defendant's convictions are affirmed.

¶ 26 WE CONCUR: GREGORY K. ORME, Judge, and WILLIAM A. THORNE, Jr., Judge.