63 P.3d 1284 (2003)
2003 UT App 13
In the matter of V.K.S., a person under eighteen years of age.
D.K.C. and E.L.C., Appellants,
v.
C.S., Appellee.
No. 20010455-CA.
Court of Appeals of Utah.
January 24, 2003.
Michael J. Boyle and Daniel Drage, Boyle & Drage PC, Ogden, for Appellants.
C.S., Roy, Appellee Pro Se.
Before BILLINGS, Associate Presiding Judge, BENCH and GREENWOOD, JJ.

OPINION
GREENWOOD, Judge:
¶ 1 This is an appeal from a final order terminating D.K.C. and E.L.C.'s (Grandparents) guardianship of V.K.S. and awarding custody of V.K.S. to her mother, C.S. (Mother).[1] We affirm.

BACKGROUND
¶ 2 J.S. (Father) and Mother were married in December 1994 while both were in the Navy. Mother was discharged from the Navy prior to V.K.S.'s birth in 1995 and moved into Grandparents' home where she stayed for *1285 three and a half years. V.K.S. lived in Grandparents' home from birth until the order terminating guardianship was entered in April 2001. Father never lived with Mother, except for 30 days immediately after V.K.S.'s birth. Father and Mother divorced in 1997.[2] Mother was awarded custody of V.K.S. in the divorce proceedings.
¶ 3 During her stay with Grandparents, Mother worked and went to school. Mother, with Grandparents' assistance, took care of V.K.S., although there is disagreement between the parties as to who bore the greater burden of this responsibility. In 1997, Mother and Father signed a consent to Grandparents' guardianship of V.K.S. The Petition for Guardianship was based on Mother's inability to provide adequate health care insurance and Father's inability to care for V.K.S. while residing in another state. Grandparents petitioned for guardianship because V.K.S. needed medical insurance and they were concerned with Mother's parenting skills.
¶ 4 Mother moved out of Grandparents' home in 1998 without V.K.S. In 1999, Mother filed a petition in district court to remove Grandparents as V.K.S.'s guardians. On April 11, 2001, an Order and Findings and Conclusions were entered awarding custody of V.K.S. to Mother and terminating Grandparents' guardianship.
¶ 5 The trial court found that both Mother and Grandmother had developed a bond of love and affection with V.K.S. However, the trial court also found that there was extreme hostility between Mother and Grandmother, despite Mother's substantial improvement in her life, resulting in detriment to V.K.S. Mother had married, had a second child, a stable home, a supportive husband, and employment. The trial court concluded that it was in V.K.S.'s best interest to be in the custody of Mother.
¶ 6 This appeal followed.

STANDARD OF REVIEW
¶ 7 "When reviewing [trial court determinations regarding the custody of children], we must do our own weighing and make our own decision based on the facts in the record. Nevertheless, the [trial] court is allowed a considerable latitude of discretion in child custody matters, and its judgment will not be disturbed unless we determine the [trial] court has exceeded the scope of permitted discretion or has acted contrary to law." Davis v. Davis, 2001 UT App 225, ¶ 6, 29 P.3d 676 (quotations and citations omitted) (alterations in original). Furthermore, "`[m]atters of statutory interpretation present questions of law which we review for correctness, according no particular deference to the trial court's interpretation.'" State v. Yanez, 2002 UT App 50, ¶ 8, 42 P.3d 1248 (quoting State v. Lindsay, 2000 UT App 379, ¶ 4, 18 P.3d 504), cert. denied, 53 P.3d 1 (Utah 2002).

ANALYSIS
¶ 8 Grandparents appeal the order of the district court terminating their guardianship of V.K.S. and awarding custody of V.K.S. to Mother. Grandparents argue, among other things, that (1) the district court erred by according Mother the parental presumption; (2) even if Mother was entitled to the parental presumption, the presumption was rebutted, and therefore, the court erred in not placing the parties on equal footing and determining custody under the "best interest of the child" standard; and (3) the probate court erred in determining that it was in the best interest of V.K.S. to terminate the guardianship.
¶ 9 We begin, however, by addressing the scope of the trial court's jurisdiction under the Utah Probate Code, specifically those sections addressing the Guardianship of Minors. See Utah Code Ann. §§ 75-5-201 to -212 (1993 & Supp.2002).[3] We note that Utah has adopted the Uniform Probate Code (U.P.C.), Part 2, Guardians of Minors. Thus, *1286 Utah's statutory language is identical to the U.P.C.[4] In general, "[a] person becomes a guardian of a minor by acceptance of a testamentary appointment, through appointment by a local school board under Section 53A-2-202, or upon appointment by the court." Id. § 75-5-201(1)(a) (Supp.2002). Two requirements must be met prior to the district court appointing a guardian of a minor. First, a court may only appoint a guardian of a minor "if all parental rights of custody have been terminated or suspended by circumstances or prior court order." Id. § 75-5-204 (1993) (emphasis added). Second, a court may only appoint, as guardian, a person in the "best interest of the minor." Id. § 75-5-206(1)(a) (Supp.2002) (emphasis added). If both requirements are met, the court may then grant guardianship or temporary guardianship. See id. § 75-5-207(2).
¶ 10 In this matter, Grandparents were appointed as guardians by the court.[5] There is no record as to whether the probate court determined if Mother's parental rights were "terminated or suspended by circumstance." Mother, however, consented to the guardianship and apparently there was no objection at the time guardianship was awarded. The record before us does not include the
complete record of the guardianship proceeding.... Thus, it is impossible for us to fully review the actions of the trial court in [the guardianship] proceeding. Therefore, we must assume that the trial court determined that [Mother's] parental rights were suspended by circumstances. Moreover, by acquiescing in the appointment, [Mother] waived [her] right to object to the appointment ....
Jensen v. Bowcut, 892 P.2d 1053, 1056 (Utah Ct.App.1995), cert. denied, 899 P.2d 1231 (Utah 1995); see also In re Mikrut, 175 Ariz. 544, 858 P.2d 689, 691 (Ariz.Ct.App.1993) (stating that appointment of guardian when mother's parental custody rights may not have been "terminated or suspended may have been error, but the court still had jurisdiction to appoint a guardian" where it could have been corrected by timely appeal).
¶ 11 Once appointed, "[a] guardian's authority and responsibility terminates upon the death, resignation, or removal of the guardian ...." Utah Code Ann. § 75-5-210 (1993) (emphasis added). "Any person interested in the welfare of a ward ... may petition for removal of a guardian on the ground that removal would be in the best interest of the ward." Id. § 75-5-212(1) (1993) (emphasis added). "After notice and hearing on a petition for removal ... the court may terminate the guardianship and make any further order that may be appropriate." Id. § 75-5-212(2).
¶ 12 There are no cases in Utah analyzing the proper procedures and requirements for terminating guardianship when sought by a parent. However, courts in other jurisdictions that have adopted the U.P.C. have addressed this issue under similar circumstances.[6] These courts have held that where guardianship is based on the consent of a parent, the withdrawal of consent must terminate guardianship because any other result would be a de facto termination of a parent's rights without due process. Courts base this reasoning on jurisdictional limitations, in that a probate court does not have jurisdiction to terminate parent-child relationships, which is usually the exclusive domain of the juvenile court. Therefore, these courts have held that permitting the probate court to deny a petition to remove *1287 guardianship based on consent, resulting in the termination of parental rights, would exceed the probate court's authority.
¶ 13 For example, the Arizona Court of Appeals considered a similar case requiring interpretation of the Arizona Probate Code's guardianship provisions.[7] In In re Mikrut, 175 Ariz. 544, 858 P.2d 689 (Ariz.Ct.App. 1993), a mother signed a notice waiver, which effectively granted guardianship to a non-parent. See id. at 690. There was no finding by the probate court that the mother's rights had been terminated or suspended. See id. Later, the mother sought to discharge the non-parent's guardianship but her request was denied. See id. The mother appealed. See id.
¶ 14 The appellate court reasoned that where the mother's rights were not terminated, "the appointment of the guardian was based upon [mother's] consent to give the guardian only temporary custody of her children... as a substitute for suspension by circumstances pursuant to [section 14-5204]." Id. at 691 (emphasis added). The court then determined that if guardianship is based on parental consent, when "consent is withdrawn due to the parent's changed circumstances, the probate court's refusal to terminate the guardianship may operate as a de facto termination of the parent's parental rights." Id. at 692. The court noted that "[a]lthough guardianship proceedings in Arizona are heard in probate court, the juvenile court has exclusive jurisdiction over petitions to terminate the parent-child relationship." Id.; see also Morales v. Glenn, 114 Ariz. 327, 560 P.2d 1234, 1237-38 (1977) ("To completely sever the parent-child relationship, the juvenile court has exclusive jurisdiction. The Probate Court does not have jurisdiction to award custody when custody by operation of the law or by court order ... has already been determined."). The Mikrut court observed that
[w]hen a child lives and becomes established in a home, neighborhood, and school, barring any abuse in the home of the guardian, it would likely be best for the child to remain with the guardian in the familiar environment. While this may be acceptable when the parent-child relationship has been terminated or suspended after appropriate court proceedings, it certainly raises due process concerns for a parent who consented to the appointment of a guardian due to circumstances that have changed by the time the parent seeks termination of the guardianship.
858 P.2d at 693. The court then held "that where a guardianship is based on the parent's consent, the proper procedure upon the parent's withdrawal of consent is for the probate court to terminate the guardianship. If the guardian believes the parent to be an unfit parent, he or she can petition the [juvenile] court ... to terminate or suspend the parent-child relationship." Id.
¶ 15 In similar circumstances, distinguished only by the fact that the mother directly appealed the guardianship order, the Idaho Supreme Court also interpreted the language "suspended by circumstances." See In re Copenhaver, 124 Idaho 888, 865 P.2d 979, 984 (1993). The Idaho court found that where the mother made it clear that she no longer wanted to leave her children with the appointed guardians and that she was willing and capable of caring for them, the circumstances suspending her custody no longer existed. See id. at 984-85. As a result, "findings regarding the children's living situation, school enrollment, financial support and contact with their mother no longer had any bearing." Id. at 985. The court reversed the probate court's decision granting guardianship to a non-parent, finding error in its conclusion that the mother's "parental rights were still suspended by circumstances and in proceeding with the second part of the analysis relating to the best interests of the children." Id.
¶ 16 The Montana Supreme Court, adopting the reasoning in Copenhaver, held that a mother's parental rights were not terminated or suspended when she "appeared in [the] action, withdrew her consent to the temporary guardianship, and filed a petition to *1288 terminate the temporary guardianship." In re D.T.N., 275 Mont. 480, 914 P.2d 579, 583 (1996). The Montana court found those actions indicated that the mother did not "voluntarily relinquish[] her right to physical custody of her child." Id. In coming to this conclusion, the court also relied on the commentary to the Uniform Probate Code § 5-204, which states:
Nothing in this Article is intended to deal with the status of a so-called natural guardian, with the authority of a parent over a child, or with authority over a child or children that may be conferred by other state laws.
The court [under the Probate Code] is not authorized to appoint a guardian for one for whom a parent has custodial rights or for one who has a parental guardian.
D.T.N., 914 P.2d at 583 (quotations and citations omitted); see Unif. Probate Code § 5-204 (Comment), 8 U.L.A. 336 (1998). The court further stated that "the guardianship provisions of the Probate Code were never intended as a substitute for the custody provisions of our [divorce laws] nor the prescribed and demanding procedures established for the termination of parental rights." D.T.N., 914 P.2d at 583.
¶ 17 The Supreme Court of Rhode Island also examined the language "suspended or terminated" in response to a certified question from its appellate court. In Carr v. Prader, 725 A.2d 291 (R.I.1999), a mother died leaving her child in the custody of an aunt. See id. at 292. The mother and father had been divorced, with custody awarded to the mother. See id. The aunt filed a petition for guardianship to which the father objected. See id. The certified question was whether the probate court has "jurisdiction to appoint a guardian of [a child] who is not orphaned and who has a surviving natural parent whose parental rights have never been terminated but whose fitness to serve as the minor's guardian have been raised in the probate proceedings?" Id. at 293. As in the cases described earlier, the Rhode Island court held that granting a guardianship petition over the objection of a natural parent would implicitly terminate a parent's rights to his or her child. See id. In analyzing the probate court's jurisdiction to make such an implicit determination, the court held that although the probate court has the authority to appoint guardians, it lacks "the express authority to terminate parental rights or divest parents of the custody of their children." Id. The court stated that only the family court has the power to terminate parental rights in "limited statutorily-dictated circumstances." Id. at 293-94. The court observed that
the Family Court possesses the particularized expertise and resources that make it well suited for this task. It is able to marshal the "department of children, youth, and families, the department of health, the department of human services, the department of education, the office of substance abuse, and the department of mental health, retardation, and hospitals to render all assistance [] within [] its jurisdictional power" to aid the court.
Id. at 294-95 (alterations in original) (citation omitted). The court then held that the "[p]robate [c]ourt does not have jurisdiction to appoint a permanent guardian of [a child] who is not orphaned and who has a surviving natural parent whose parental rights have never been terminated and who opposes [the] petition." Id. at 295.[8]
¶ 18 None of the cases decided under the U.P.C. directly address the effect of the statutory *1289 language in section 75-5-212(1), stating that "[a]ny person interested in the welfare of a ward . . . may petition for removal of a guardian on the ground that removal would be in the best interest of the ward." (Emphasis added.) Some of the courts' decisions, however, impact that question. In Copenhaver, the court said that the parental presumption precludes consideration of a child's best interest, unless it is shown "`that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable amount of time.'" 865 P.2d at 983 (citation omitted). Given the court's ultimate conclusion that the probate court had erred in considering evidence related to best interest, it necessarily held that none of the circumstances rebutting the parental presumption existed. In D.T.N., the court noted that parents have "a fundamental constitutional right to the custody of [their] children." 914 P.2d at 582. As a result, "the `best interest of the child' test is only relevant after there has been a showing of dependency or abuse or neglect pursuant to our termination of parental rights statutes, or in custody disputes between two natural parents." Id. These cases indicate that under the U.P.C. best interest should be determinative only where the petition to terminate guardianship is filed by a nonparent or, if filed by a parent, the parent has been adjudicated to have abandoned, neglected, or abused his or her child under the Juvenile Code.
¶ 19 Utah appellate case law addressing provisions in Utah's juvenile code and divorce laws is of some assistance. In In re M.W., 2000 UT 79, 12 P.3d 80, the Utah Supreme Court held that the parental presumption "can be lost in certain cases, including when a parent has had his or her parental rights terminated or has previously lost custody of his or her child." Id. at ¶ 16. The "parental presumption" is judicially created in recognition of the constitutional "right of a parent to maintain parental ties to his or her child." Id. at ¶ 14 (citations and quotations omitted). In order for a loss of custody to result in deprivation of the parental presumption, "that loss of custody, whether temporary or permanent, must be the result of a final factual determination on the merits of an underlying petition." Id. at ¶ 18. In M.W., a juvenile court decision on a neglect petition constituted the final factual determination. See id. at ¶¶ 20-22.
¶ 20 This court considered a father's petition to modify a divorce petition after he had stipulated in the divorce proceedings that his child's maternal grandparents should be awarded custody of the child. See Davis v. Davis, 2001 UT App 225, ¶¶ 4-5, 29 P.3d 676. In the petition, the father sought custody of the child, alleging a change of circumstances. See id. at ¶ 5. Applying M.W., this court held that the father was not entitled to the parental presumption because he had lost custody as the result of a final factual determination in the divorce proceedings. See id. at ¶ 10. The court stated that "[b]y signing a custody stipulation that reserved only visitation, Father implicitly agreed that his parental presumption had been rebutted and that [the child's] best interests were served by giving custody to the [grandparents]." Id.
¶ 21 Although M.W. and Davis are not directly on point, they do indicate that court action on disputed facts or reflecting a valid stipulation is required to diminish a parent's rights in and to his or her child. This requirement stems from the constitutional basis for parental rights and rights to due process.
¶ 22 As stated earlier, in Utah the district court has jurisdiction over "guardianship proceedings." Utah Code Ann. § 75-5-101(1).[9] Also, as in manyif not allof the states with the U.P.C., "except as provided by law," Utah's juvenile court has exclusive jurisdiction concerning "the termination of the legal parent-child relationship ... including termination of residual parental rights and duties." Utah Code Ann. § 78-3a-104(1)(f) (Supp. 2002).[10]
*1290 ¶ 23 Having reviewed the cases construing the U.P.C. and other related areas of the law, we adopt the reasoning of those cases decided under the U.P.C. We believe that they are consonant with the comments under the act and with jurisdictional limitations provided by Utah statutes. As observed in several cases, the U.P.C. was not intended to allow use of guardianship proceedings as a means to involuntarily terminate parental rights. See D.T.N., 914 P.2d at 583 (stating guardianship proceedings not proper means to involuntarily terminate parental rights); In re Sabrina Mae D., 114 N.M. 133, 835 P.2d 849, 853 (Ct.App.1992) (same), cert. denied 113 N.M. 744, 832 P.2d 1223 (1992). Therefore, we hold that when a parent merely consents to the appointment of a guardian for that parent's minor child, there is only a suspension by circumstances of the parent's custody. If the parent thereafter petitions for termination of the guardianship and custody of the child, the probate court must grant the petition unless there has been a final factual determination depriving the parent of custody or terminating the parent's parental rights, by a court with proper jurisdiction.
¶ 24 Applying our holding to the facts of this case, we note that Mother consented to Grandparents' guardianship. Mother has never been adjudicated by a court of competent jurisdiction to have lost or given up custody of her child, nor has she been found to have abandoned, abused, or neglected V.K.S. Therefore, the trial court was not required to conduct a "best interest" analysis. In petitioning for termination of the guardianship, Mother's temporary suspension by circumstances of custody ended. There is, consequently, no basis for continuing the guardianship under the Utah Probate Code.[11]
¶ 25 Lastly, Grandparents are not without a remedy. If Grandparents believe that Mother's parenting skills are so deficient as to meet the substantial burden to terminate the parent-child relationship, Grandparents can file a petition in juvenile court. See Utah Code Ann. § 78-3a-404 (2002) ("Any interested party ... may file a petition for termination of the parent-child relationship with regard to a child."); see also Mikrut, 858 P.2d at 693 ("If the guardian believes the parent to be an unfit parent, he or she can petition the court ... to terminate or suspend the parent-child relationship.").[12]

CONCLUSION
¶ 26 In sum, the probate court did not err nor abuse its discretion in granting Mother's petition to end Grandparents' guardianship of V.K.S. The district court acting under the Utah Probate Code does not have jurisdiction to terminate the parent-child relationship; that jurisdiction lies with the juvenile court in situations such as found in this case. Thus, we affirm.
¶ 27 WE CONCUR: JUDITH M. BILLINGS, Associate Presiding Judge and RUSSELL W. BENCH, Judge.
NOTES
[1] Mother is the daughter of D.K.C. (Grandmother). E.L.C. (Grandfather) is Mother's stepfather.
[2] Father is not a party to this action and is living in Michigan.
[3] Utah's district courts have original jurisdiction of cases arising under the Probate Code. See Utah Code Ann. § 78-3-4(1) (2002) (stating district courts have "original jurisdiction in all matters civil and criminal, not excepted in the Utah Constitution and not prohibited by law.").
[4] Compare Utah Code Ann. §§ 75-5-201 to -212 (1993 & Supp.2002), with Unif. Probate Code §§ 5-201 to -212, 8 U.L.A. 332-53.
[5] Guardians are appointed by (1) acceptance of testamentary appointment, (2) other written instruments, or (3) appointment by the court. See Utah Code Ann. §§ 75-5-201 to -202.5. It is clear that V.K.S.'s guardianship was "court appointed" because (1) testamentary appointment and appointment by "other written instruments" requires the death of a parent and analysis of a will, and (2) the court entered an order appointing guardianship. Therefore, we analyze V.K.S.'s guardianship under sections relating to court appointed guardianship.
[6] Grandparents have not cited any cases decided under the U.P.C. or Utah's Probate Code to support their arguments but have relied primarily on Utah cases concerning divorce and custody. Because the underlying issue in this case is the proper interpretation of the probate statutes, we look to case law in Utah and elsewhere for guidance.
[7] Arizona, like Utah, adopted the U.P.C., and has identical language relating to the appointment of guardians. Compare Utah Code Ann. §§ 75-5-201 to -212, with Ariz.Rev.Stat. Ann. §§ 14-5201 to -5212 (West 1995 & Supp.2002).
[8] It must be noted, however, that some courts, although not interpreting the U.P.C., have held that the probate court does have the power to refuse a parent's petition to terminate guardianship if the court finds that it is in the best interest of a child. For example, the Arkansas Court of Appeals held that where a guardianship was initially based on consent, the parents had the burden to show that termination of guardianship was in the best interest of the child. In re Markham, 32 Ark.App. 46, 795 S.W.2d 931, 933 (1990); see also In re Jessie E., 137 N.H. 336, 627 A.2d 591, 593 (1993) (holding New Hampshire law requires guardianship proceedings to be determined merely on a "best interest of the child standard" where court had jurisdiction to terminate parental rights and to grant guardianships); Styck v. Karnes, 462 N.E.2d 1327, 1329-30 (Ind. Ct.App.1984) (stating custody determinations are inherent in guardianship proceedings where guardian has the "care and custody" of ward; such determinations should be made under "best interest standard").
[9] The juvenile court also has jurisdiction to appoint a guardian of a minor under specified circumstances. See Utah Code Ann. § 78-3a-118(2) (2002).
[10] The only exception to the juvenile court's exclusive jurisdiction to terminate parental rights "provided by law," appears to be provided in Utah Code Ann. § 78-30-4.16 (2002) regarding contested adoptions.
[11] Grandparents also contest the trial court's order restricting Grandfather's visitation with V.K.S. While we agree that the evidence justifying those restrictions is questionable, we are unaware of any basis under the Utah Probate Code for ordering visitation rights in these circumstances.
[12] As part of the trial court's Findings of Fact and Conclusions of Law, it ordered that V.K.S. be placed under the protective supervision of the Division of Child and Family Services to "develop a parenting and transition plan which will address the issues set forth in the foregoing findings of fact ...." The propriety of this order was not raised on appeal and we do not address it in this opinion.