2005 UT App 234

**In the Matter of the ESTATE OF Louis J. UZELAC.**

**Barbara Uzelac, Appellant,**

v.

**Joseph G. Uzelac, Susan Brooke Mageras, Allyson D. Uzelac, Angela Marie Mageras, and Amanda Mageras, Appellees.**

**No. 20040356–CA.**

Court of Appeals of Utah.

May 26, 2005.

---

Charles M. Bennett, Blackburn & Stoll LC, Salt Lake City, for Appellant.

Legrand R. Curtis Jr. and Mary C. Gordon, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and ORME.

## AMENDED OPINION [1]

BILLINGS, Presiding Judge:

¶ 1 Barbara Uzelac (Wife) appeals from a trial court order denying her certain property under an Ante Nuptial Agreement (the Agreement). We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 On April 14, 1976, Wife and Louis J. Uzelac (Husband) were married. Prior to their marriage, Husband and Wife executed the Agreement, which provides, in relevant part:

> In the event of the termination of this marriage by death or otherwise all of the real, personal or mixed property owned by each party prior to their marriage shall be the sole and separate property of him or her or their respective estates.

> In the event that either party to this Agreement should sell, convert or exchange any of the property owned by him or her prior to the marriage, then the proceeds from such sale or exchange or such other real or personal property acquired from such sale shall be deemed subject to this Agreement, not as property acquired during the marriage, but as substitute property owned by the party prior to marriage.

> The parties further agree that all property, whether real, personal or mixed acquired by the parties shall go to the survivor, in the event of the death of the other, or if otherwise terminated, shall be equitably divided as the parties may agree or as may be decreed by a court of competent jurisdiction.

> In the event of the simultaneous death of the parties all property acquired by them during their marriage, be it real, personal or mixed shall be divided one-half to [Wife's] estate and one-half to [Husband's] estate.

¶ 3 After Husband and Wife were married, Husband prepared a will (Will), which directs that Husband's estate is to be divided as follows: (1) all debts, expenses, and administration expenses are to be paid; (2) Husband's two daughters are to receive equal shares of Husband's property; (3) Wife is to receive property per the terms of the Agreement; and (4) Husband's two granddaughters are to receive $5000.00 each. It is undisputed that both the Agreement and the Will are enforceable.

¶ 4 At the time Husband and Wife were married, Husband owned (1) two parcels of real property, on which Husband and Wife resided at the time of his death (Residence); (2) six water shares in Cottonwood Tanner Ditch Company; and (3) $52,012.42 in his bank account. During their marriage, both Husband and Wife kept numerous separate bank accounts and deposited most of the money they acquired during the marriage into their respective separate accounts.

¶ 5 On November 6, 1999, Husband died. At the time of his death, Husband had three "payable on death" (POD) accounts totaling $189,049.15 with his two daughters as beneficiaries, and one POD account totaling $12,790.00 with Wife as beneficiary. In addition, Husband had non-POD accounts totaling $75,876.85 and stocks worth $36,950.91. On December 7, 1999, the Will entered into probate.

---

1. This Amended Opinion replaces the Opinion in Case No. 20040356–CA issued on March 17, 2005.

¶ 6 Wife received the $12,790.00 from the POD account to which she was a beneficiary; a life estate in the Residence pursuant to the Agreement; $4858.83 from Husband and Wife's joint accounts; and $15,000.00 withdrawn from one of Husband's accounts prior to his death and deposited after his death into the joint account. Husband's two daughters received all other property owned by Husband at the time of his death, including the Residence subject to Wife's life estate.

¶ 7 Wife challenged this distribution on numerous grounds, essentially arguing that under the Agreement she is entitled to all property Husband acquired during the marriage. After a bench trial, the trial court did not disturb the distribution, ruling that the Agreement provides that Wife is to receive only the property Husband and Wife acquired jointly and held together during the marriage. Wife appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 First, Wife argues that she qualifies as a creditor under Utah Code sections 75–3–801 to –816, which give priority to her claims under the Agreement. *See* Utah Code Ann. §§ 75–3–801 to–816 (2000). Interpretation of statutes presents a question of law we review for correctness. *See In re V.K.S.*, 2003 UT App 13, ¶ 7, 63 P.3d 1284.

¶ 9 Second, Wife argues that the trial court erred by interpreting the Agreement to provide that Wife receives only property Husband and Wife acquired together and held jointly during their marriage. We review a trial court's interpretation of a contract for correctness. *See Nova Cas. Co. v. Able Constr., Inc.*, 1999 UT 69, ¶ 6, 983 P.2d 575.

¶ 10 Finally, Wife argues that the trial court erred by ruling that Husband's daughters had not waived their rights to certain personal property. Where the facts are undisputed, "the proper standard of waiver presents a legal question which is reviewed for correctness." *Pledger v. Gillespie*, 1999 UT 54, ¶ 16, 982 P.2d 572.

## ANALYSIS

### I. Wife's Status as a Creditor

¶ 11 Wife first argues that she is a creditor, as defined in Utah Code sections 75–3–801 to –816, which gives priority to her claims. *See* Utah Code Ann. §§ 75–3–801 to –816. The personal representative of Husband's estate (PR) argues that any claim Wife may have had as a creditor is now barred by the one-year time limitation in Utah Code section 75–3–803. We agree with the PR.

¶ 12 Under section 75–3–803, a creditor must bring a claim, at the latest, "one year after the decedent's death." *Id.* § 75–3–803(1)(a). Because Wife filed her breach of contract claim over two years after Husband's death, her claim falls outside the one-year limitation.

¶ 13 Wife argues that although she did not formally bring her claim for over two years, she did present her claim to the PR within the one-year limitation by providing the PR a copy of the Agreement. Section 75–3–804(1)(a) provides that a claimant need not commence a court action to comply with the one-year limitation, but rather "may deliver or mail to the personal representative, or the personal representative's attorney of record, a written statement of the claim indicating its basis, the name and address of the claimant, and the amount claimed." *Id.* § 75–3–804(1)(a). Further, the written statement of claim must at least describe "the general nature of the obligation," as measured by the "notice pleading standard" under rule 8 of the Utah Rules of Civil Procedure. *Quinn v. Quinn*, 772 P.2d 979, 980 (Utah Ct.App.1989) (quotations omitted) (citing *Dementas v. Estate of Tallas*, 764 P.2d 628, 630 (Utah Ct. App.1988) ).

¶ 14 Merely providing the PR with a copy of the Agreement, which all parties have always agreed is binding, without explaining how the Agreement had been breached or the amount she was claiming as a creditor under the Agreement, does not begin to satisfy the requirements of notice pleading. Wife's failure to give the PR notice of the amount she was claiming as a creditor or what her theory of recovery as a creditor was

under the Agreement prejudiced the PR as he proceeded to treat her as a beneficiary and thus took actions which were contrary to her now claimed status. Thus, even assuming that Wife would otherwise qualify as a creditor, her claim is barred by the one-year limitation in section 75-3-803.

## II. Interpretation of the Agreement

¶ 15 Wife argues that the trial court erred by construing the language of the Agreement, "all property ... acquired by the parties," to mean all property acquired *together* by the parties. The PR argues that the trial court's interpretation is correct, and thus, under the Agreement Wife is entitled only to the property jointly acquired and held by Husband and Wife at the time of Husband's death. We agree with Wife.

¶ 16 "The underlying purpose in construing or interpreting a contract is to ascertain the intentions of the parties to the contract." *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139. When interpreting a contract, "[w]e look to the writing itself to ascertain the parties' intentions, and we consider each contract provision ... in relation to all of the others, with a view toward giving effect to all and ignoring none." *Id.* at ¶ 18 (alterations in original) (quotations and citation omitted). "If the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law." *Id.* at ¶ 19 (quotations and citation omitted).

¶ 17 The disputed language from the Agreement is as follows:

The parties further agree that all property, whether real, personal or mixed acquired by the parties shall go to the survivor, in the event of the death of the other, or if otherwise terminated, shall be equitably divided as the parties may agree or as may be decreed by a court of competent jurisdiction.

The PR argues that when read in light of the surrounding clauses, it is evident that this language must be read as "property acquired by the parties *together* shall go to the surviv-

or," which would mean that Wife is not entitled to property Husband acquired on his own and kept in separate accounts. The surrounding clauses are as follows:

In the event of the termination of this marriage by death or otherwise all of the real, personal or mixed property owned by each party prior to their marriage shall be the sole and separate property of him or her or their respective estates.

In the event that either party to this Agreement should sell, convert or exchange any of the property owned by him or her prior to the marriage, then the proceeds from such sale or exchange or such other real or personal property acquired from such sale shall be deemed subject to this Agreement, not as property acquired during the marriage, but as substitute property owned by the party prior to marriage.

¶ 18 The PR argues that these clauses demonstrate that the parties intended to keep their assets separate so that their marriage would not undermine their intention that certain property transfer to their children. Wife argues that these clauses demonstrate this intention was only as to property Husband and Wife brought into the marriage, not property they obtained during the marriage. We agree with Wife. The surrounding clauses merely make clear that the property acquired during the marriage is to be treated differently and is to go to the survivor.

¶ 19 The plain meaning of "acquired by the parties" in this context also cuts against the PR's reading. In divorce cases, we have consistently interpreted language such as "acquired by the parties during marriage" to mean all property either party acquires, whether held in separate accounts or not. *Jefferies v. Jefferies*, 895 P.2d 835, 837 (Utah Ct.App.1995) (using "acquired by the parties during marriage" to mean property acquired by either party or both); *see also Elman v. Elman*, 2002 UT App 83, ¶ 38, 45 P.3d 176 (same).

¶ 20 Because the contested language also speaks of property "acquired by the parties" in the event of termination of the marriage for reasons other than death, we must as-

sume that it has the same plain meaning it has in the divorce context. We conclude the plain language of the Agreement provides that Wife is entitled to all property acquired during the marriage and held at Husband's death.

¶ 21 We vacate all orders previously entered by the trial court based on its erroneous interpretation of the Agreement including the order of September 27, 2003. We remand for the trial court to determine, under our interpretation of the Agreement, the amount owed to Wife as a beneficiary under the Will as per the Agreement. We also remand for a determination of what property of Husband's is available to satisfy her claim under the Agreement.[2]

### III. Waiver

¶ 22 Wife argues that the trial court erred by failing to recognize the PR's waiver of rights to certain personal property. The PR argues that the trial court did not err because it merely required a verbal waiver to be reduced to writing before recognizing it. We agree with Wife.

¶ 23 During the trial, one of Husband's daughters stated that she was interested in receiving only nine items of Husband's personal property. When asked whether the PR was waiving claim to all other items of personal property, his attorney stated that Wife could keep "everything else." After trial, the PR failed to include this waiver in the draft order, and Wife objected to the order on that basis. The court entered the order over Wife's objection, stating that the PR could file a separate written waiver if he chose.

¶ 24 The trial court erred by refusing to recognize the waiver to personal property made in open court. "A waiver is the intentional relinquishment of a known right. To constitute a waiver, there must be an existing right, benefit, or advantage, a knowledge of its existence, and an intention to relinquish it. [The relinquishment] must be distinctly made, although it may be ex-

press or implied." *Soter's, Inc. v. Deseret Fed. Sav. & Loan Ass'n*, 857 P.2d 935, 938 (Utah 1993) (alteration in original) (citation omitted). The PR's statement that Wife could keep all items of personal property except those specifically identified by Husband's daughter meets all these requirements. Therefore, the trial court erred by refusing to recognize the PR's waiver.

### CONCLUSION

¶ 25 Because Wife brought her claim as a creditor after the one-year limitation period had expired, the trial court did not err by refusing to recognize Wife's claims as a creditor. However, the trial court did err by construing the Agreement to entitle Wife only to property Husband and Wife acquired and held together during marriage. Also, the trial court erred by failing to recognize the PR's waiver to certain personal property. Accordingly, we affirm in part and reverse and remand in part.

¶ 26 I CONCUR: JAMES Z. DAVIS, Judge.

ORME, Judge (concurring):

¶ 27 I concur in the lead opinion and agree that Wife, as the surviving spouse, is entitled under the agreement to all marital property not otherwise dealt with in the agreement, including property Husband *acquired* during the marriage. However, I write separately to draw the trial court's attention to the general rule, not mentioned in the lead opinion, that any appreciation of, or interest on, premarital property is separate property and not part of the marital estate. *See Dunn v. Dunn*, 802 P.2d 1314, 1320 (Utah Ct.App. 1990) ("The general rule is that equity requires that each party retain the separate property he or she brought into the marriage, including any appreciation of the separate property."). There are some exceptions to this rule, *see, e.g., Burt v. Burt*, 799 P.2d 1166, 1169 (Utah Ct.App.1990), but if none of the exceptions apply, the trial court must, in

---

**2.** We do not concur in Judge Orme's concurring opinion. The issue discussed therein was not before the court, we did not address it, and it should not be considered the law of the case.

We leave it to the trial court to determine what is "all property acquired during the marriage and held at Husband's death."

determining what Wife is entitled to under the Agreement, ensure that any interest on, or appreciation of, Husband's premarital property is regarded as his separate property rather than as property acquired during the marriage.

¶ 28 I go out of my way to make this point not because I see any suggestion to the contrary in the lead opinion, but only because I gather from comments made at oral argument that Wife's counsel may hope to employ an approach on remand that reflects a different view. Specifically, it was mentioned that certain bank accounts were in a particular amount at the time of marriage and were several times larger at the time of Husband's death. The implication seemed to be that the difference was property acquired during the marriage to which Wife would be entitled. This approach ignores the general rule I have highlighted. In actuality, Wife would only be entitled to the difference *net* of the interest attributable to Husband's premarital principal.

¶ 29 I must also offer a couple of comments about footnote 2 of the lead opinion, the addition of which is what prompted our issuance of an Amended Opinion in this case. This footnote was added in response to Wife's petition for rehearing, which was aimed solely at my separate opinion. The thrust of the petition was that equitable principles used in making property distributions in divorce cases are inapplicable here. As to footnote 2, my colleagues are right: the issue I have highlighted was not before the trial court, given the erroneous interpretation it made of the Agreement; the majority chose not to address it; and as my comment is that of a single appellate judge, it surely is not "the law of the case." All of that having been said, it is far from aberrational for such a viewpoint to be expressed. On the contrary, appellate courts often will—and often should—comment on matters likely to come before the trial court on remand. *See, e.g., Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 22, 20 P.3d 388 (stating that "where an appellate court finds that it is necessary to remand a case for further proceedings, it has the duty of 'pass[ing] on matters which may then become material' ") (citation omitted).

Such comments are necessarily advisory only, as the appellate court can do little more than guess at how the proceedings on remand will unfold.

¶ 30 As to the main point made in the petition for rehearing, I can only observe that the lead opinion itself, in developing the interpretative analysis that leads to Wife's success on Issue II, relies—and appropriately so—on two divorce cases. It seems obvious that divorce cases will be the lodestar of jurisprudence concerning marital property, whether it be on the question of what the phrase "acquired by the parties" means or the question of how to treat interest earned or appreciation accrued during marriage on a spouse's separate property. Were I the trial judge responsible to sort this all out on remand, I would be quite skeptical about the proposition that the rules defining marital property vary considerably, depending on the legal context in which such issues arise.