IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37739

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | |
| GUARDIANSHIP OF JOHN DOE AND | ) | |
| JOHN DOE I, MINOR CHILDREN | ) | Boise, January 2011 Term |
| UNDER EIGHTEEN YEARS OF AGE. | ) | |
| -------------------------------------------------------- | ) | 2011 Opinion No. 21 |
| JOHN (2010-15) DOE II, JANE DOE I, | ) | |
| | ) | Filed:  February 8, 2011 |
|    Petitioners-Appellants, | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| v. | ) | |
| | ) | |
| JOHN DOE III, JANE DOE II, | ) | |
| | ) | |
|    Respondents-Respondents on Appeal. | ) | |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Christopher M. Bieter, Magistrate Judge.  Hon. Kathryn A. Sticklen, District Judge.

The decision of the district court is <u>affirmed</u>.  No attorney fees are awarded. Costs are awarded to Respondents.

Gulstrom, Henson & Petrie, Nampa, for Appellants.  Chad Gulstrom argued.

Finch & Associates, Boise, for Respondents.  Brooke O'Neil argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This case involves a petition to terminate a guardianship filed by the natural parents (Mother and Father) of two minor children.  The Guardians were appointed general guardians of the children after Mother and Father were arrested in Utah on drug charges.  Mother and Father subsequently sought to terminate the guardianship on the ground that the circumstances giving rise to it had ended.  The magistrate court found that it was not in the best interest of the children to terminate the guardianship and return custody to the parents, and denied the petition.  The district court affirmed the magistrate's decision.  Mother and Father argue on appeal that the magistrate court erred in requiring Mother and Father to show that termination of the

1

guardianship was in the best interest of the children because they are entitled to a parental presumption of custody that precludes consideration of the best interest of the children once it is shown that the circumstances leading to the guardianship have ended.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mother and Father are the natural parents of John and Jane Doe.[1] They are not married. On March 1, 2007, Mother and Father were pulled over while driving through the state of Utah with John and Jane in the car, and after approximately four pounds of marijuana and other drugs and paraphernalia were found in the car, they were both arrested.[2] Jane was three years old at the time, and John was one. Both Mother and Father have prior arrests and incarcerations in Idaho for various drug-related charges. Father was incarcerated in Utah and Mother was released and temporarily resided in Arizona. On March 5, 2007, a shelter hearing was held and the children were placed in the temporary custody of the State of Utah. On March 8, 2007 the Guardians filed a Petition for Guardianship of Jane and John in Idaho. On March 9, 2007, the Guardians were appointed temporary guardians of John and Jane by the magistrate court. That Order provided that the guardianship would terminate six months from the date of the Order or upon the appointment of a qualified person as guardian. Subsequently a hearing was held on the petition for guardianship. Mother was present at the hearing and seemed to consent to the guardianship, though her exact response is not fully reflected in the hearing transcript. The guardian ad litem attorney for the minor children stated at the hearing that both parents agreed there was a need for guardianship. The magistrate specifically told Mother at that hearing that once the general guardianship was appointed "[i]t can only end on a petition by somebody that the guardianship end and that it is in the children's best interest that it end." On May 1, 2007, the Guardians were appointed general guardians of John and Jane in an Order by the magistrate finding that all the requirements for guardianship were met under the Idaho Uniform Probate Code.

Mother and Father filed a petition to terminate the guardianship on July 2, 2007. The magistrate signed a stipulated order in August 2007 setting conditions for visitation by Mother

---

[1] They also have a third child who was born in October of 2008 and lives with Mother and Father.

[2] Father was charged with three felony counts: possession of methamphetamine, possession of marijuana, and possession with intent to distribute and two misdemeanor counts: possession of drug paraphernalia and driving with measurable controlled substance in the body. Mother was charged with three felony counts: possession of methamphetamine, possession of marijuana, possession with intent to distribute, and one misdemeanor count of possession of drug paraphernalia.

and Father with the minor children, which included the requirement that the parents locate a counselor for those visitations.[3] Mother and Father filed another petition to terminate the guardianship on February 11, 2009. A hearing was held on July 17, 2009, and the magistrate made oral findings of fact that Mother and Father had not shown that terminating the guardianship and returning custody to Mother and Father was in the best interest of the children. He was particularly concerned with the lack of compliance by Mother and Father with the visitation order. At the time of the hearing, Jane was five years old and John was three. Mother and Father appealed to the district court, arguing that this Court's decision in *In re Copenhaver*, 124 Idaho 888, 865 P.2d 979 (1993), requires that the magistrate make a factual finding at the termination hearing that the parent has abused, neglected or abandoned the child, or is unable to provide a stable home environment for the child before considering the best interest of the child. The district court affirmed the decision of the magistrate.

### III. ISSUES ON APPEAL

1. Whether the magistrate erred in requiring Mother and Father to show it was in the best interest of Jane and John to terminate the guardianship.

2. Whether the magistrate's decision was supported by substantial and competent evidence.

### IV. STANDARD OF REVIEW

"When reviewing a decision rendered by the district court in its appellate capacity under I.R.C.P. 83(a), this Court considers the record before the magistrate court independently of the district court, while giving due regard to the district court's analysis." *Leavitt v. Leavitt*, 142 Idaho 664, 668, 132 P.3d 421, 425 (2006). The "magistrate court's findings of fact shall be upheld if they are supported by substantial, competent evidence in the record." *Marchbanks v. Roll*, 142 Idaho 117, 119, 124 P.3d 993, 995 (2005). The Court is free "to determine whether the law was properly construed and applied." *Hopper v. Hopper*, 144 Idaho 624, 626, 167 P.3d 761, 763 (2007).

### V. ANALYSIS

**A. The Magistrate Did Not Err in Requiring Mother and Father to Show It Was In the Best Interest of the Children to Terminate the Guardianship.**

---

[3] That stipulated order has not been made a part of the appellate record, but is referenced at several points in the hearing transcript.

Mother and Father argue that the magistrate erred when he denied the petition to terminate the guardianship on the grounds that Mother and Father had not shown it was in the children's best interest to terminate the guardianship. They argue that

> Idaho law does not require a natural parent to establish it is in a child's best interest to be returned to the natural parent once the circumstances giving rise to the guardianship have ended unless there has been a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment.

In support of this argument, they cite this Court's decision in *In re Copenhaver*, 124 Idaho 888, 865 P.2d 979 (1993), as well as I.C. § 15-5-204. Both of these authorities refer to the standard for appointment of a guardian. The Guardians contend that *In re Copenhaver* was overruled by the subsequent amendments to I.C. § 15-5-204 and that even if it was not, the magistrate found that Mother and Father's parental rights were suspended by circumstances. First, this Court declines to rule on whether the amendments to I.C. § 15-5-204 overruled *In re Copenhaver* because neither that statute nor that case are directly applicable here. Both concern the standard for appointment of a guardian, while this case concerns only the standard for termination of a guardianship. The magistrate never made any findings at the hearing on the petition to terminate the guardianship that the parents' parental rights were suspended by circumstances, and therefore the Court does not adopt that argument.

Guardianship proceedings in Idaho are governed by statute. *In re Doe*, 148 Idaho 432, 439, 224 P.3d 499, 506 (2009). A person can become a guardian of a minor in one of two ways under I.C. § 15-5-201, either by "acceptance of a testamentary appointment" or "upon appointment by the court." I.C. § 15-5-201. Idaho Code § 15-5-204 governs the standard for "court appointment of a guardian of a minor." It states that "[t]he court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment." *Id.* § 15-5-204. As amended in 1999, that statute goes on to state that "[i]n all cases, the court shall consider the best interests of the child as the primary factor in the determination whether to appoint, and whom to appoint, as guardian for such child." *Id.* § 15-5-204. Idaho Code § 15-5-207(3) states that the court must find that "the requirements of section 15-5-204 of this part have been met" in order to make the appointment. Once the appointment is made, "[t]he guardianship status continues until terminated." *Id.* § 15-5-201.

4

"A guardian's authority and responsibility terminates upon the death, resignation or removal of the guardian or upon the minor's death, adoption, marriage or attainment of majority." *Id.* § 15-5-210. The only ground for termination listed in I.C. § 15-5-210 that is present here is removal. While Mother and Father did not name their petition to terminate the guardianship a "removal," it is the only ground for termination in I.C. § 15-5-210 that applies in this case. Further, while the petition to terminate the guardianship was labeled with the statute I.C. § 15-5-204, that statute concerns the conditions for appointment and thus does not apply to this petition for termination of a guardianship. Mother and Father wished to remove the Guardians as general guardians and return custody to themselves. To remove a guardian, "any person interested in the welfare of a ward, or the ward, if fourteen (14) or more years of age, may petition for removal of a guardian on the ground that the removal would be in the best interest of the ward." *Id.* § 15-5-212(a). The Order that was appealed in this case is not the appointment order, but is the district court's Order affirming the denial of the termination of the guardianship. Thus, the issue in this case revolves around the standard for the termination of a guardianship by removing the appointed general guardian.

In *In re Copenhaver*, the natural parents appealed a grant of a petition to appoint "permanent" guardians under I.C. § 15-5-204. *In re Copenhaver*, 124 Idaho at 890, 865 P.2d at 981. The guardians were originally appointed temporarily, and subsequently the magistrate entered an appointment of "permanent" guardianship, finding that it was in the best interest of the children to do so. *Id.* at 891, 865 P.2d at 982. This Court held that only if the trial court has found that the parents' rights had been terminated or that a special set of circumstances existed which deprived "a parent of the ability to accept the rights and responsibilities of parenthood" may it consider the best interest of the child in the appointment of a guardian. *Id.* at 892, 865 P.2d at 983. It found that because the circumstances leading to the temporary guardianship were no longer present, the court could not enter an appointment of "permanent" guardianship because the parental presumption applied. *Id.* at 890, 865 P.2d at 981. The parental presumption "operates to preclude consideration of the best interest of the child unless the nonparent demonstrates either that the natural parent has abandoned the child, that the natural parent is unfit or that the child has been in the nonparent's custody for an appreciable period of time." *In re Copenhaver*, 124 Idaho at 892, 865 P.2d at 983 (citing *Stockwell v. Stockwell,* 116 Idaho 297, 299, 775 P.2d 611, 613 (1989)). The Court in *In re Copenhaver* made its decision based on

5

application of the parental presumption to the appointment statute, I.C. § 15-5-204, as it existed at the time, holding that "the magistrate erred in proceeding with the permanent guardianship." *In re Copenhaver*, 124 Idaho at 890, 865 P.2d at 981. The Court's decision in *In re Copenhaver* did not concern termination of a guardianship, or removal of a guardian, and the Court did not discuss the presumption as applied to I.C. § 15-5-212(a), the statute governing removal. Rather, it concerned the correct standard for the court to appoint a "permanent" guardianship. The appointment of a new guardian cannot be considered until the current guardianship is terminated. This Court held in *In re Doe*, 148 Idaho at 439, 224 P.3d at 506, that termination of a guardianship by removal under I.C. § 15-5-212(a) must occur *before* another guardian can be appointed. Thus, any reliance Mother and Father place on the statute governing appointment and the cases interpreting that statute is a step ahead of the issue at hand: the standard for termination of a guardianship and particularly termination of the guardianship by removal of the guardian. Therefore, the Court declines to apply *In re Copenhaver*'s preclusion of the consideration of the best interest of the child at the time of appointment of a guardian to the facts of this case, which concern termination of the guardianship.

The standard for termination of guardianship by removal of a guardian is set out in I.C. § 15-5-212(a). That statute states that "[a]ny person interested in the welfare of a ward, or the ward, if fourteen (14) or more years of age, may petition for removal of a guardian *on the ground that removal would be in the best interest of the ward*" (emphasis added). The statutory mandate for removal is clear and unambiguous. It does not provide any language regarding a presumption of custody to be applied when the person that petitions for removal is a natural parent. Rather, it states that "any person" may petition for removal of a guardian if he or she shows that removal is in the best interest of the child. At oral argument, counsel for Mother and Father argued that the removal statute is unconstitutional. However, Mother and Father made no argument in their briefing to this Court or to the court below that the "best interest" standard set out in I.C. § 15-5-212(a) is unconstitutional as applied to natural parents. An argument not raised below and not supported in the briefs is waived on appeal. *Crowley v. Critchfield*, 145 Idaho 509, 512, 181 P.3d 435, 438 (2007); I.A.R. 35(a)(6). Therefore, the Court declines to consider the constitutionality of the plain language of I.C. § 15-5-212(a) as applied to natural parents at this time.

6

Mother and Father argue the Utah Court of Appeals case of *In re V.K.S.*, 63 P.3d 1284 (Utah Ct. App. 2003) provides authority that the parental presumption applies to the removal of the Guardians here. Mother and Father note that Utah's removal statute is identical to Idaho's.[4] That case held that where a guardianship arises out of consent or stipulation of the parties without any finding regarding the merits of guardianship, a natural parent's petition to terminate the guardianship by removing the guardians must be granted absent a finding that the parents' parental rights had been suspended by circumstances. *Id.* at 1286. The court cited to *In re Copenhaver*, and correctly noted that *In re Copenhaver* concerned the appeal of an appointment. *Id.* at 1287. It also noted that none of the cases it cited directly addressed the effect of the statutory language in the removal statute. *Id.* at 1288–89. The court found it was without jurisdiction to deny the petition for removal, because it reasoned that doing so absent a finding that the parents' parental rights had been terminated or suspended would be a de facto termination of parental rights by a probate court without due process. *Id.* at 1286–87.[5] The parents still have the right at any time under I.C. §§ 15-5-210 to -212 to petition to regain custody of their children. *In re Copenhaver*, 124 Idaho at 891, 865 P.2d at 982. The decision of the Utah Court of Appeals is not binding on this Court and we decline to follow it in light of our interpretation of the unambiguous language of the statute governing removal, I.C. § 15-5-212(a).

In determining the best interest of the children, the magistrate court could and should consider that it is usually in the best interest of the children to be in the custody of the natural parent(s). That factor can and should be considered in reaching the ultimate conclusion of whether termination of the guardianship is in the best interest of the child. In conclusion, the

---

[4] Utah Code § 75-5-212(1) provides:

> Any person interested in the welfare of a ward, or the ward, if 14 or more years of age, may petition for removal of a guardian on the ground that removal would be in the best interest of the ward. A guardian may petition for permission to resign. A petition for removal or for permission to resign may, but need not, include a request for appointment of a successor guardian.

[5] In citing other courts that have held the same, the Utah Court of Appeals stated that:

> Courts base this reasoning on jurisdictional limitations, in that a probate court does not have jurisdiction to terminate parent-child relationships, which is usually the exclusive domain of the juvenile court. Therefore, these courts have held that permitting the probate court to deny a petition to remove guardianship based on consent, resulting in the termination of parental rights, would exceed the probate court's authority.

*In re V.K.S.*, 63 P.3d 1284 at 1286–87. This jurisdictional issue is not present in the Idaho court system which does not have separate probate and juvenile courts.

Court holds that the magistrate did not err in requiring Mother and Father to show it was in the best interest of the children to terminate the guardianship by attempting to remove the guardians.

**B.      The Court Declines to Review Whether There Was Substantial and Competent Evidence to Support the Magistrate's Finding That Termination of the Guardianship Was Not in the Children's Best Interest.**

Mother and Father include the issue of whether the magistrate's findings were supported by substantial and competent evidence in the Notice of Appeal, but they make no argument and cite no authority in their briefing to support it. In their Reply Brief, Mother and Father do refute the Guardians' argument that the magistrate made findings at the hearing on the petition to terminate the guardianship that Mother and Father's rights were suspended by circumstances. However, they make no argument that the finding of the magistrate, that termination of the guardianship was not in the best interest of the children, was not supported by substantial and competent evidence, rather, they argue that the magistrate's "conclusion of law" to consider the best interest of the children was in error. Under I.A.R. 35(a)(6), an issue raised on appeal that is not supported in the brief by propositions of law or authority is deemed waived and will not be considered by this Court. *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 266, 207 P.3d 988, 997 (2009). Therefore, this Court declines to review the issue of whether the magistrate's finding that termination of the guardianship was not in the best interest of the children was supported by substantial and competent evidence.

**C.      The Guardians Are Not Awarded Attorney Fees on Appeal.**

The Guardians request attorney fees under I.C. § 12-120 and -121. They do not provide any support or argument for an award of fees under I.C. § 12-120, and thus this Court does not award fees under that section. *See* I.A.R. 35(a)(6) (argument section of the brief must contain "citations to the authorities, statutes and parts of the transcript and record relied upon"). Attorney fees may be awarded under I.C. § 12-121 to the prevailing party if the appeal was brought frivolously or without a foundation in law or fact. *Gonzalez v. Thacker*, 148 Idaho 879, 884, 231 P.3d 524, 529 (2009). The issues in this case were not frivolous, because Mother and Father presented an issue of law regarding the standard for termination of a guardianship with supporting authority from a sister state, Utah. Therefore, no attorney fees are awarded to the Guardians.

**VI. CONCLUSION**

This Court holds that the magistrate did not err in requiring Mother and Father to show that it was in the best interest of their children to terminate the guardianship and thus affirms the district court's affirmance of the magistrate's denial of the petition. The Court declines to review whether there was substantial and competent evidence to support the magistrate's finding that termination of the guardianship was not in the best interest of the children. No attorney fees are awarded to the Guardians under I.C. § 12-121 because the appeal was not frivolous or unsupported. Costs to the Guardians.

Chief Justice EISMANN, Justices BURDICK and HORTON, CONCUR.

J. JONES, J., concurring in the result.

I concur in the result reached by the Court. In the circumstances of this case, the magistrate judge correctly required a showing that termination of the guardianship was in the best interests of the children. The issue of concern to me relates to the statutory basis upon which the decision rests and the potential application of the decision to instances where there is no reasonable ground for questioning the fitness of parents to recover physical custody of their children out of a guardianship.

The magistrate judge referenced Idaho Code section 15-5-212(a) as the statutory basis for termination of a guardianship. It is possible that the Legislature intended that to be the case but the statute does not specifically address the issue of termination of a guardianship. Rather, it speaks of "removal" of a guardian. A person who wishes to remove a guardian may, according to the statute, "include a request for appointment of a successor guardian." This would likely be in the event that the ward still had need for a guardian. It is true that removal can result in termination of the guardianship but, under subsection (b) of the provision, termination is in the discretion of the judge and need not always be the result.

The guardianship statutes clearly evidence a recognition by the Legislature that there is a difference between removal of a guardian and termination of a guardianship. Idaho Code section 15-5-210 provides a number of circumstances in which a guardianship may be terminated, none of which address the situation in this case. However, that section deals specifically with termination of a guardianship rather than removal of a guardian. Idaho Code section 15-5-212A, which pertains to guardianships arising in connection with proceedings under the Child Protective Act (which is not involved in this case), draws a distinction between termination of a guardianship and removal of a guardian. Subsection (5) sets out the conditions for termination of

9

a guardianship, requiring a showing of a substantial and material change in circumstances and consideration of the best interests of the ward. Subsection (6) deals with removal, setting the standards for such a proceeding. The two are distinctly separate concepts.

Section 15-5-212(a) deals with removal of a guardian in a case not involving the Child Protective Act. The focus of removal is necessarily directed toward the qualifications of the serving guardian. The question in such a proceeding is whether the best interest of the ward is served by keeping or removing the guardian. We recently so stated in the case of *In Re Doe*, 148 Idaho 432, 224 P.3d 499 (2009):

> Although Heisses' motion sought a determination that [the guardian] was unfit to be Children's guardian, it was in legal effect a motion to remove her as guardian. Idaho Code §15-5-212(a) provides that a guardian may be removed "on the ground on that removal would be in the best interest of the ward." The court held that this statute required a finding that the guardian was unfit or unqualified to remain as guardian.

*Id.* at 438−39, 224 P.3d at 505−06. The Court continued: "Thus, the issue is not whether the person seeking to become the successor guardian may be a better guardian. It is whether there is a reason to remove the current guardian." *Id.* at 439, 224 P.3d at 506. Further, the Court said:

> the determination of whether removal of the guardian would be in the best interest of the child(ren) must focus upon the fitness of the existing guardian and whether it would be in the best interest of the child(ren) to remove the guardian regardless of who may be then appointed as successor guardian.

*Id.* Thus, the focus of a removal proceeding is the on existing guardian, not on the petitioner who wishes to succeed to the position of the guardian.

The focus in this case was exclusively on the parents, who sought to terminate the guardianship, rather upon the guardians. The inquiry in this case was more akin to that provided in Idaho Code section 15-5-212A, where parents seek to terminate a guardianship established under the terms of the Child Protective Act.

Perhaps by legislative oversight, the situation involved in this case—termination of a guardianship not involving the Child Protective Act—is not specifically addressed in Section 15-5-212. Where the Legislature has failed to provide a termination provision under the circumstances of this case—where no Child Protective Act question is involved and where the focus is not removal of an existing guardian—the Court need not, however, be at a loss in resolving the issue.

The grounds for appointment of the guardians in this case are not entirely clear from the record. As recited by the district court, "Without making any specific findings that there was a basis to appoint guardians under Idaho Code § 15-5-204, the magistrate issued an order on March 9, 2007 finding that the statutory requirements had been met . . ." The court's order continued, "the magistrate issued an order appointing Isaac and Sarah as guardians upon finding that all the requirements for appointment under Idaho Uniform Probate Code had been met." Idaho Code section 15-5-204 provides for appointment of a guardian for a minor if "all parental rights of custody have been terminated by prior court order or upon a finding that the child has been neglected, abused, abandoned, or whose parents are unable to provide a stable home environment." Perhaps the last ground might apply here but, again, it is not entirely clear. However, where a parents' rights have been terminated or where the child has been neglected, abused, or abandoned, it seems apparent that inquiry should be made as to the situation of the parents, their ability to provide proper parental care, and the best interests of the minor, in determining whether to terminate the guardianship and allow the parents to resume custody.

What prompts me to write this concurrence, however, is the potential that the ruling here will be applied in cases where the parent or parents are by no means unfit but where custody has been transferred to a guardian by unfortunate circumstances—for instance, where a single parent or both parents are sent overseas by the government or some other employer for a period longer than contemplated by Idaho Code section 15-5-104, or where a single parent or both parents are incapacitated for a long period by an accident involving a substantial period of recuperation. Where necessity requires the appointment of a guardian to look after the interests of the ward in circumstances where the parents are not unfit but still unable to provide the care necessary for the child during a period of absence or incapacity, it does not seem as if the same rule should apply,—i.e., that such parents should have to come into court and prove that they are fit parents and that it serves the best interests of the child to terminate the guardianship and restore their custody.

It is true that section 15-5-212(a) can probably be stretched enough to apply to the current situation. Or, perhaps, we can import the provisions of section 15-5-212A(5) to apply here because the Legislature intended such result, at least by implication based on its enactment of the provisions of subsection (5) to apply to a very similar situation where the fitness of parents seeking to resume custody of their children is in question. However, it would be preferable for

11

the Legislature to adopt a specific provision dealing with termination of a guardianship other than in the Child Protective Act setting and to make a distinction between guardianships where potentially unfit parents are involved and those where the parents' fitness is not an issue.