# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 41421

| | |
|---|---|
| SAMUEL J. ZYLSTRA, | ) |
| | ) Boise, September 2014 Term |
| Plaintiff-Appellant-Cross Respondent, | ) |
| | ) 2014 Opinion No. 112 |
| v. | ) |
| | ) Filed: October 29, 2014 |
| STATE OF IDAHO and BOISE STATE | ) |
| UNIVERSITY, | ) Stephen W. Kenyon, Clerk |
| | ) |
| Defendants-Respondents-Cross Appellants | ) |

_____

Appeal from the district court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Cheri C. Copsey, District Judge.

The judgment of the district court is <u>affirmed</u>.  Costs on appeal are <u>awarded</u> to respondents.

Geoffrey D. Swindler Spokane, WA and James F. Whitehead, Seattle, WA, attorneys for appellant.  James F. Whitehead argued.

Anderson, Julian & Hull, Boise, attorneys for respondents.  Phillip J. Collaer argued.

_____

WALTERS, J. *pro tem*

This is an action for recovery of damages against the State of Idaho. The district court dismissed the action on motion of the State for summary judgment. We affirm.

## I. NATURE OF THE CASE

This case was brought under the Idaho Tort Claims Act asserting negligence by a public university in allowing a student-athlete to return to competition after sustaining a head injury. Plaintiff, Samuel Zylstra (Zylstra), was a student and wrestler at Boise State University (BSU). Zylstra brought suit against BSU and the State of Idaho (hereinafter referred to collectively as BSU) alleging that BSU employees negligently allowed him to continue wrestling after he was injured during the first day of a two-day tournament. On motion by BSU, the district court granted summary judgment on the issue of causation, but denied summary judgment as to BSU's

1

statute of limitations arguments. Notwithstanding the denial in part, the partial grant of summary judgment provided adequate grounds to dismiss Zylstra's action. Before this Court, Zylstra appeals the district court's decision to strike two expert affidavits offered in opposition to BSU's summary judgment motion and also alleges judicial bias. BSU cross-appeals the district court's denial of summary judgment on the statute of limitations issue.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Zylstra enrolled as a student at BSU in 2007. Shortly after enrolling, he successfully tried out for BSU's wrestling team. He attended BSU and competed as a wrestler from 2007 to 2010. For each year that he was an active member of the wrestling team, Zylstra signed liability waivers releasing BSU from any claims for damages or injuries sustained while participating in athletics. On February 26-27, 2010, Zylstra and the BSU wrestling team competed at the Pac-10 wrestling championships in Davis, California. During his first match on February 26, 2010, Zylstra suffered what would later be diagnosed as a concussion when his head was slammed to the mat by his opponent. In response to the possible head trauma, BSU coaches called a timeout so that athletic trainer, Andy Chorn ("Chorn"), could assess the presence and severity of any injuries and determine whether it was safe for Zylstra to continue the match. The parties disagree about whether Zylstra briefly lost consciousness during the event. Upon being approached by Chorn, Zylstra complained that his head hurt. During the 90-second injury timeout, Chorn conducted neurological testing checking for eye motility, double vision, ringing in the ears, and sensitivity to light. According to Chorn, all testing was negative, a concussion was not detected, Zylstra's dizziness cleared immediately, and Zylstra indicated that he was fine and wished to continue. Based on these findings, Zylstra was permitted to return to competition, completing two matches that first day, as well as two more the following day.[1] Zylstra ultimately placed fifth in the tournament, qualifying him for the NCAA Championships.

On March 10, 2010, still suffering from persistent headaches and other concussive symptoms, Zylstra was examined by team physician, Scot Scheffel, M.D. in Boise, Idaho. Dr. Scheffel opined that Zylstra suffered a "significant concussion" at the Pac-10 tournament and indicated that he would not medically clear Zylstra to wrestle in the NCAA Championships. The

---

[1] Immediately following the completion of Zylstra's first match and over the course of the next two days, Chorn re-assessed Zylstra multiple times. All tests returned negative for a concussion, but Zylstra persisted in his complaint of a headache. After the second day of the tournament concluded, on the evening of February 27, 2010, Zylstra ate, socialized, and behaved normally with his parents and teammates, although he contends he did not feel well.

parties disagree about the degree to which these concussion-related symptoms impacted Zylstra's daily life and ability to function in the weeks and months following the tournament.

On October 22, 2010, Zylstra filed a notice of claim with the Idaho Secretary of State's office, and he filed an initial complaint initiating this lawsuit in district court on February 21, 2012. On April 12, 2013, BSU filed a motion to compel challenging the sufficiency of Zylstra's expert disclosures and answers to expert-related written discovery. On May 9, 2013, the district court held a hearing on the motion to compel. While the court refrained from formally granting BSU's motion to compel, the district judge found that BSU was entitled to full and complete discovery responses.

On June 4, 2014, BSU filed a motion for summary judgment on two issues, statute of limitations and causation. On July 1, 2013, Zylstra filed his opposition to BSU's motion for summary judgment, supported by various affidavits. On July 15, 2013, BSU filed a motion to strike the affidavits of expert witnesses Dr. Epperson and Dr. Brzusek, as well as certain lay witnesses. On August 8, 2013, the district court held a hearing addressing both BSU's motion to strike and motion for summary judgment. Regarding the motion to strike, the court granted BSU's motion as to the expert witnesses and granted in part and denied in part as to the lay witnesses. As to BSU's summary judgment motion, judgment was entered against Zylstra on the element of causation, but was denied as to the statute of limitations issue.

On August 12, 2013, prior to a final judgment being entered against him, Zylstra filed a motion for continuance and reconsideration. In this motion, Zylstra sought reconsideration of the decision striking his expert affidavits, as well as an order re-instating his case and setting a new trial date. BSU formally opposed this motion on August 14, 2013, and the motion was heard and denied on October 10, 2013.

Final judgment was entered against Zylstra on August 15, 2013. Zylstra timely filed his notice of appeal on September 13, 2013, and BSU timely filed its notice of cross-appeal on September 17, 2013.

### III. ISSUES ON APPEAL

1. Whether the district court abused its discretion in granting BSU's motion to strike two expert affidavits offered by Zylstra in opposition to BSU's summary judgment motion.

2. Whether the presiding district court judge was impartial and disinterested in the outcome of the case and, if not, whether this alleged bias warrants reversal.

**3.**     Whether the district court erred in finding a disputed issue of material fact regarding Zylstra's competency and sanity for statute of limitations and tolling purposes.

## IV. STANDARD OF REVIEW

### A.     Motions to Strike

"Summary judgment proceedings are decided on the basis of admissible evidence." *Campbell v. Kvamme*, 155 Idaho 692, 696, 316 P.3d 104, 108 (2013). Hence, "[t]he admissibility of evidence contained in affidavits and depositions in support of or in opposition to a motion for summary judgment is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012). "This Court applies an abuse of discretion standard when determining whether testimony offered in connection with a motion for summary judgment is admissible." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 15, 175 P.3d 172, 177 (2007). "A trial court does not abuse its discretion if it (1) correctly perceives the issue as discretionary, (2) acts within the bounds of discretion and applies the correct legal standards, and (3) reaches the decision through an exercise of reason." *O'Connor v. Harger Constr., Inc.*, 145 Idaho 904, 909, 188 P.3d 846, 851 (2008) (citing *West Wood Invs., Inc. v. Acord*, 141 Idaho 75, 82, 106 P.3d 401, 408 (2005)).

### B.     Judicial Bias

"Whether it is necessary for a judicial officer to disqualify himself in a given case is left to the sound discretion of the judicial officer himself." *Bradbury v. Idaho Judicial Council,* 149 Idaho 107, 113, 233 P.3d 38, 44 (2009) (citing *Sivak v. State,* 112 Idaho 197, 206, 731 P.2d 192, 201 (1986)). The legal standard for abuse of discretion is outlined in section IV(A), *supra*. With the exception of jurisdictional issues, "[a]n argument not raised below and not supported in the briefs is waived on appeal." *Doe v. Doe,* 150 Idaho 432, 436, 247 P.3d 659, 663 (2011) (citing *Crowley v. Critchfield,* 145 Idaho 509, 512, 181 P.3d 435, 438 (2007)).

## V. ANALYSIS

### A.     The District Court Did Not Err in Striking the Affidavits of Drs. Epperson and Brzusek Offered by Zylstra in Opposition to BSU's Motion for Summary Judgment.

On the deadline established for filing dispositive motions, BSU filed a motion for summary judgment on the issues of statute of limitations and causation. Zylstra timely filed an opposition, which included, *inter alia*, affidavits from experts Dr. Epperson and Dr. Brzusek. BSU moved to strike the affidavits of Drs. Epperson and Brzusek, contending that the experts

4

were offering testimony that had not been previously disclosed despite written discovery requests and an admonishment from the court regarding the need to fully respond to the same. The district court agreed with BSU's position as to the expert witnesses, striking the affidavits of Drs. Epperson and Brzusek. The district court specifically found that the opinions offered were new and untimely, being submitted after the close of discovery and disclosed for the first time in opposition to a summary judgment motion. Furthermore, the district court found that Zylstra was on clear notice of his obligation to provide these opinions to BSU prior to the close of discovery and the dispositive motions filing deadline.

On appeal, Zylstra essentially argues that the opinions of Dr. Epperson were not new in a "legally significant way" because the October 2010 claim letter submitted to BSU, Dr. Epperson's December 2011 report, and Zylstra's April 8, 2013 expert disclosures all put BSU on sufficient notice of what his opinions regarding causation would be. Zylstra challenges the district judge's characterization of the disclosures as being general in nature, instead stating they were "very specific about Dr. Epperson's opinions on causation, [specifically] that it was likely [Zylstra] had suffered additional injuries after suffering the first concussion and that those injuries caused substantial further damages." Zylstra also points to statements made by BSU's counsel during the May 9, 2013 hearing on BSU's motion to compel as support for his contention that BSU understood the scope of Dr. Epperson's expected testimony.

As to Dr. Brzusek, Zylstra argues that while his written opinions were not available at the time BSU's motion for summary judgment was filed, his expected testimony as described in the April 8, 2013 disclosures was sufficient and was further fleshed out in a supplemental disclosure served on April 29, 2013. Zylstra also asserts that Dr. Brzusek's scheduled examination of Zylstra could not be arranged until June 10, 2013 (six days after the dispositive motions filing deadline), a fact which Zylstra recalls (although not captured on the transcript) was "brought to the court's and defense counsel's attention during the [May 9, 2013] hearing." Regardless, Zylstra contends that Dr. Brzusek's opinion was not new because it was "consistent with the views of Dr. Epperson on causation and did not . . . differ[] in any material respect from the opinions . . . described in [Dr. Epperson's] report and in the [l]ist of experts[,] . . . which defense counsel seemed to acknowledge were sufficient and understandable."

Zylstra goes on to argue that he reasonably believed discovery had not closed based on "an implicit agreement" between counsel, and that, in the absence of an exact deadline issued by

5

the district court at the May 9, 2013 motion to compel hearing, his supplementation of expert disclosures was "seasonable" as ordered. Zylstra also points to the district court's closing comments at the motion to compel hearing wherein BSU was instructed to "go through the discovery [it] has" and that if it "want[s] to renew [its] motion . . . [it] needs to set out exactly what it is that's missing." Zylstra argues this statement gave rise to his reasonable expectation that if BSU had "any concerns about the scope and extent of expert disclosures, there would at least be another [m]otion to [c]ompel before [Zylstra] would face a motion to strike his experts' opinions." Lastly, and in the alternative, Zylstra contends that even if the affidavits were considered to provide new information, "they were provided a full three months before trial," thereby causing no prejudice to BSU. For all of these reasons, Zylstra seeks reversal of the district court's decision to strike the affidavits of Drs. Epperson and Brzusek, arguing the presiding judge ignored applicable legal principles and that the decision was not the product of an exercise of reason. Thus, he brings this appeal based on the district court's alleged abuse of discretion.

Zylstra does not challenge the first prong of the test for abuse of discretion, acknowledging that "the judge announced at the end of the summary judgment hearing that the issue was one of discretion." Therefore, at issue on appeal are the second and third prongs, specifically whether the presiding district court judge: (1) failed to act within the appropriate boundaries of her discretion and (2) failed to reach the decision striking the expert affidavits through an exercise of reason. For the reasons outlined in greater detail below, this Court holds that the district court properly exercised its discretion in striking the affidavits of Dr. Epperson and Dr. Brzusek.

Before analyzing the decision to exclude expert testimony and the decision to grant summary judgment in favor of BSU, it is important to understand more clearly the underlying facts of the case and the way in which discovery proceeded. More specifically, the timeline surrounding the parties' protracted exchange of expert-related written discovery, as well as the dates established in the district court's July 13, 2012 Order Governing Proceedings and Setting Case for Trial ("Scheduling Order"), provide crucial context for understanding the district court's exercise of reason in its decision granting BSU's motion to strike the expert affidavits of Drs. Epperson and Brzusek. The Scheduling Order established, *inter alia*, the following deadlines: a trial date of September 30, 2013; disclosure of plaintiff's experts by April 3, 2013;

6

initiation of all discovery by June 2, 2013; and, a dispositive motions filing deadline of June 4, 2013. While the Scheduling Order permitted the parties to adjust the expert and discovery-related deadlines by stipulation, the same order specifically and emphatically stated that the dispositive motions filing deadline could only be altered by the court.

On April 12, 2013, BSU filed a motion to compel challenging the sufficiency of Zylstra's April 8, 2013[2] expert disclosures and answers to expert-related written discovery served by BSU. On May 9, 2013, the district court held a hearing on the motion to compel. BSU brought its motion on dual grounds, based on its understanding that the level of detail and specificity required for expert disclosures was subject to the interpretation of the presiding district court judge.[3] The presiding judge provided clarity at the May 9, 2013 hearing, stating her interpretation that while neither the Idaho Rules of Civil Procedure nor the Scheduling Order affirmatively require the same level of detail as the Federal Rules of Civil Procedure, BSU's discovery requests[4] specifically and timely sought the same relevant expert-related information.

While the court refrained from formally granting BSU's motion to compel, citing a need for more specific information regarding the precise information that was missing for each corresponding expert, the district judge expressly found that the requests were proper, the sought-after information was crucial for the case's preparation for trial, BSU was entitled to full and complete responses, and to the extent Zylstra had not provided such answers to date, answers or supplements needed to be provided seasonably. In providing guidance to the parties, the court stated, "[Y]ou can't just say here's the general subject matter. You've got to disclose the actual opinions they're going to testify to." Since a formal ruling was not entered, the court invited BSU to renew its motion at a future date if Zylstra's responses remained lacking sufficient detail.

In addition to the merits of the motion to compel, BSU posed a hypothetical to the court revealing its underlying motive in filing the motion, namely its concern that Zylstra's lack of complete, timely, and definitive expert-related disclosures would have a downstream impact on

---

[2] While Zylstra's expert disclosures were due on or before April 3, 2013 under the terms of the Scheduling Order, the parties stipulated to a brief extension to April 8, 2013.
[3] BSU argued that while certain district judges mirror the federal approach in interpreting Idaho Rule of Civil Procedure 26(b)(4), and thus require certain automatic and detailed expert disclosures, others do not and instead require the parties to specifically ask for the desired information in the form of discovery requests.
[4] Specifically at issue were Zylstra's responses to BSU's Interrogatory No. 4 and Request for Production No. 1. Read together, these requests sought information about any experts Zylstra intended to call as witness at trial, including: the subject matter of the testimony; the facts the expert would rely upon; any and all opinions to which the expert was expected to testify; a comprehensive curriculum vitae for each witness; and, any pertinent reports generated, including a list of the materials relied upon in generating said reports.

both the dispositive motions filing deadline and the September 30, 2013 trial date. BSU clearly articulated its concern and opinion that if expert opinions were not disclosed prior to the June 4, 2013 dispositive motions filing deadline, any opinions not previously disclosed should not be permitted either in support or in opposition of a contemplated summary judgment motion. In fact, BSU stated its intent to move to strike such opinions should they be provided in response to any contemplated summary judgment motion by BSU. While the district court refused to "rule in a vacuum," it stated that it would have to be "an extraordinary situation" to allow parties to untimely provide or change expert opinions in a manner that would prejudice the other side. Based on the court's review of the expert disclosures and its finding that "many of them are couched in terms of possible [opinions]" and fail to present actual opinions held to a reasonable degree of certainty, the court cautioned Zylstra as follows: "[A]t this point if you're anticipating using them as an expert and you've identified them, you should have known what their expert opinion is, and . . . that should have been disclosed because [it] was requested in [an] interrogator[y] and [a] request for production."

The hypothetical scenario posed by BSU proved to be prophetic. On June 4, 2013, BSU filed a motion for summary judgment on two issues, statute of limitations and causation, arguing that Zylstra: (1) failed to file timely notice of this lawsuit with the State and (2) failed to produce expert opinion demonstrating that the decision to allow Zylstra to continue wrestling was the cause of his alleged damages. On July 1, 2013, Zylstra filed his opposition to BSU's motion for summary judgment, supported by various affidavits, including those from Drs. Epperson and Brzusek. On July 15, 2013, BSU filed a motion to strike the affidavits of expert witnesses Dr. Epperson and Dr. Brzusek, as well as lay witnesses Dale Dolifka, Jeff Dolifka, Stephanie Zylstra, and Helen Zylstra. As to the expert witnesses, BSU asserted that the opinions of Drs. Epperson and Brzusek were untimely, being disclosed for the first time as attachments to Zylstra's July 1, 2013 opposition to summary judgment. As to the lay witnesses, BSU contended that portions of their affidavits contained inadmissible hearsay or required expertise. Given these deficiencies, BSU argued these affidavits should be stricken, either in whole or in part.

On August 8, 2013, the district court held a hearing addressing both BSU's motion to strike and motion for summary judgment. Regarding the motion to strike, the court: (1) granted BSU's motion as to the expert witnesses, finding the opinions to be newly and untimely disclosed and (2) granted in part and denied in part as to the lay witnesses, excluding the portions

8

identified as hearsay or requiring expertise, but allowing the witnesses to testify about their personal observations of Zylstra's behavior. The court's decision to strike portions of the lay witness affidavits is not at issue on appeal. In striking the expert affidavits, the court squarely rejected Zylstra's arguments that the opinions provided were not new because BSU was aware that Drs. Epperson and Brzusek would opine regarding causation and that given Dr. Epperson's December 2011 report and the April 2013 disclosures, BSU should have known what this testimony would be, specifically that BSU coaches caused Zylstra harm by allowing him to continue wrestling after the injury timeout. The court found these opinions to be new because, prior to Zylstra's July 1, 2013 opposition to summary judgment, BSU had not been provided with definitive opinions held to a reasonable degree of medical certainty from either expert.

As to Dr. Brzusek, the court found that despite a generalized subject matter disclosure and a short statement regarding his expected testimony if called to testify, his actual opinions were not formally disclosed prior to July 1, 2013. The court found significant that BSU timely filed its summary judgment motion on the last possible day for submitting dispositive motions under the Scheduling Order and that Dr. Brzusek met with and examined Zylstra for the first time six days after the dispositive motion was filed. As to Dr. Epperson, the court found that his opinions were new because (1) his December 2011 report presented a generalized discussion of causation, but did not contain an actual opinion regarding the same and (2) his July 1, 2013 affidavit exceeded the scope of causation in that it contained support for Zylstra's incapacity arguments relevant to the tolling issue also raised in BSU's motion for summary judgment. The substance and tone of the December 2011 report was generalized and speculative in nature, even expressing Dr. Epperson's need to gather additional information before being able to render a definitive opinion.[5] The district court observed at the August 8 hearing, "Nowhere in that initial

---

[5] The pertinent findings of Dr. Epperson's 24-page report are as follows:

> Zylstra sustained a head trauma [on] 2/26/10 during a Pac-10 regional wrestling tournament at the University of California at Davis. There was retrograde amnesia, loss of consciousness and post-traumatic amnesia. . . .
> He may have sustained additional concussions when he was put back into matches in a state of post-traumatic amnesia. Further information would be helpful, but prolonged post-traumatic amnesia for four months suggests the likelihood of subsequent concussions. The significant current brain dysfunction deficits also suggest more than one concussion.
> . . .
> I believe these [cognitive and emotional] problems stem from his concussion or multiple concussions. There was no evidence of such problems before his head injuries. There was no

report . . . does Dr. Epperson state that his opinion regarding subsequent concussions is made with a reasonable degree of medical probability or even something somewhat similar." The court also found significant that almost all of the "additional information" considered by Dr. Epperson in generating his untimely affidavit was in existence and could have easily been made available to him prior to the close of discovery and the passage of the dispositive motions filing deadline.

In striking the two expert affidavits, the district court stated, "[T]his is precisely the concern that BSU had at the May 9th hearing. It is precisely the harm that BSU [was] trying to avoid and they articulated that concern. [Zylstra] was on very clear notice that [this] was an issue." The court went on:

> Counsel for BSU specifically discussed his concern that if BSU files a motion for summary judgment based on failure to prove a prima facie case and [then] Mr. Zylstra proceeds to file new expert opinion disclosures based on that motion, such opinions should be stricken. He put everybody on notice that that's exactly what he would do.

In its concluding remarks regarding the two stricken affidavits, the district court summarized:

> [I]n the face of an express warning issued by this Court [at the May 9th hearing], at [that] point [Zylstra] had an opportunity to immediately seasonably supplement those [disclosures]. The information upon which Dr. Epperson relied could have been looked at and immediately have an update of his expert opinion. That did not happen. . . . [Dr.] Brzusek . . . could have immediately had an examination and supplemented that. Neither thing was done. Instead, [Zylstra] waited until the motion was filed and at that time sprang new and different opinions on [BSU]. For that reason, I strike both affidavits.

After addressing the motion to strike, the district court addressed BSU's summary judgment motion. On the issue of causation, judgment was entered against Zylstra. However, with respect to BSU's contention that Zylstra's delay in filing his claim was inexcusable, summary judgment was denied. Regarding causation, namely whether BSU's decision to allow Zylstra to continue wrestling after the injury timeout caused damages, the district court ruled that Zylstra failed to make a *prima facie* showing. The court specifically found that Dr. Epperson's December 2011 report failed to opine to a reasonable degree of medical certainty that BSU's decision caused plaintiff's alleged injuries and that the remaining opinions discussed Zylstra's symptoms only generally, failing to directly establish causation. Without an expert opinion rebutting the opinion of BSU's expert on the element of causation, the district court found in

---

evidence of an underlying progressive condition that would have resulted in these problems if the head traumas had not occurred. There was no evidence of other causation.

favor of BSU on summary judgment. Based upon Zylstra's failure to formally raise the issue on appeal, he does not appear to contest that, in the absence of affidavits from his causation experts, the district court's grant of summary judgment against him on the issue was proper.

On the issue of statute of limitations and tolling, and BSU's contention that Zylstra's delay in filing his claim was inexcusable, summary judgment was denied. BSU challenges this ruling on cross-appeal, as addressed in section V(C), *infra*.

On August 12, 2013, prior to a final judgment being entered against him, Zylstra filed a motion for continuance and reconsideration. Specifically, Zylstra sought reconsideration of both the district court's decision striking the affidavits of Drs. Epperson and Brzusek, as well as its related decision granting summary judgment in favor of BSU on causation. In addition, Zylstra sought an order re-instating his case and setting a new trial date. BSU formally opposed this motion on August 14, 2013, and the motion was heard and denied on October 10, 2013. At the October 10, 2013 hearing, Zylstra articulated his understanding that the parties had an "implicit agreement" to extend discovery beyond the deadline contained in the Scheduling Order, that the district court was made aware of Zylstra's need to conduct additional, planned discovery at the May 9, 2013 hearing on BSU's motion to compel, and that the court's silence somehow acted as a formal grant of this contemplated extension. In addition, Zylstra persisted in his argument that Dr. Epperson's December 2011 report put BSU on sufficient notice regarding what his ultimate expert opinions would be.

In considering these arguments during the October 10, 2013 hearing, the district court took a brief recess to listen to the recording of the May 9, 2013 hearing, so as to verify the accuracy of Zylstra's representations regarding the disclosures allegedly made at the hearing. After a thorough review of the recording, the district court found Zylstra's recollection to be inaccurate and unsupported by the record. Specifically, the court found that no specific statements or dates regarding outstanding expert discovery were shared by Zylstra with BSU or the court. In response, Zylstra expressed concern that if such statements and disclosures failed to appear in the record, the recording device possibly may have prematurely shut-off or his statements may have been lost due to technical difficulties related to his telephonic appearance. The court found these concerns to be unfounded, reasoning that because the recording continued uninterrupted beyond the conclusion of the hearing and into the next matter immediately

11

following on the court's calendar, it was highly unlikely that Zylstra's counsel brought anything to the court's attention that was left uncaptured by the recorder.

Setting aside these "lost" or disputed disclosures, the district court found that because a formal stipulation between BSU and Zylstra regarding an extension to the discovery deadline was never entered, as required under the Scheduling Order, Zylstra had no reasonable expectation of the dates being extended. Specifically, the district court admonished counsel for Zylstra at the October 10, 2013 hearing regarding Zylstra's motion for continuance and reconsideration:

> And, furthermore, [counsel], you had discovery deadlines. You . . . had a request from over a year before asking you for the opinions. And if what you're suggesting is that you intended to wait until after discovery was closed to potentially -- because I can tell you [that your co-counsel] was very clear [about conducting additional expert discovery], [he said, "W]e may.["] He did not say[, "We] will[,"] and neither did you.
> . . .
> No matter what, you should have had your expert opinions prepared and provided to opposing counsel prior to that discovery deadline. This . . . wasn't new information. It wasn't something that couldn't have been done prior to . . . the June 2nd cutoff. There's no reason it couldn't have been done. You had over a year to do it.

For these reasons, the district court found Zylstra was on clear notice of his obligation to provide complete expert-related discovery responses prior to the June 2, 2013 discovery cut-off, especially given the long-established June 4, 2013 dispositive motions filing deadline and September 30, 2013 trial date. As such, Zylstra's motion for continuance and reconsideration was denied.

Idaho Rule of Civil Procedure 26 "requires that parties seasonably supplement their discovery responses to any question directly addressed to 'the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony.'" *Duspiva v. Fillmore*, 154 Idaho 27, 34, 293 P.3d 651, 658 (2013) (quoting I.C.R.P. 26(e)(1)(B)). "If a party fails to seasonably supplement the responses as required in this Rule 26(e), the trial court may exclude the testimony of witnesses or the admission of evidence not disclosed by a required supplementation of the responses of the party." I.R.C.P. 26(e)(4). "[Rule 26] unambiguously imposes a continuing duty to supplement responses to discovery with respect to the substance and subject matter of an expert's testimony where the initial responses have been rejected, modified, expanded upon, or

12

otherwise altered in some manner." *Radmer v. Ford Motor Co.*, 120 Idaho 86, 89, 813 P.2d 897, 900 (1991) (citing *Zolber v. Winters*, 109 Idaho 824, 829–30, 712 P.2d 525, 530–31 (1985)).

"In general, Rule 26 of the Idaho rules, like its federal analogue, was designed to promote candor and fairness in the pre-trial discovery process." *Radmer*, 120 Idaho at 89, 813 P.3d at 900. "Typically, failure to meet the requirements of Rule 26 results in exclusion of the proffered evidence." *Id.* (citing *Coleco Indus., Inc. v. Berman,* 567 F.2d 569 (3d Cir.1977)). Concerns are heightened when expert testimony is involved. *Radmer*, 120 Idaho at 89, 813 P.3d at 900 (quoting Advisory Committee Notes, FED. R. CIV. P. 26.). However, "[w]hether to exclude undisclosed expert testimony pursuant to I.R.C.P. 26(e)(4) is committed to the sound discretion of the trial court." S*chmechel v. Dille*, 148 Idaho 176, 180, 219 P.3d 1192, 1196 (2009).

Returning to the facts of this case, and given that Drs. Epperson and Brzusek were identified as expert witnesses, the intensified concerns regarding undisclosed expert opinion are triggered here. The record establishes that Zylstra was on clear notice of his obligation to produce sufficiently detailed expert-related discovery responses and that those responses needed to be provided before the close of discovery and the dispositive motions filing deadline. The choice to exclude was left to the district court's sound discretion, which it properly exercised. First, and Zylstra does not contest this on appeal, the court recognized its discretion at the conclusion of the hearing on BSU's motion to strike and motion for summary judgment. Second, the court acted consistently and within the boundaries of its discretion. Rule 26 states that "the trial court may exclude the testimony" of an expert not properly disclosed. I.R.C.P. 26(e)(4). The "may" in Rule 26 gives the trial court the ability to weigh the prejudice of undisclosed testimony versus the value of the testimony. In weighing the prejudice to BSU against the value to Zylstra, the Court stated, "It is precisely the harm that BSU [was] trying to avoid and they articulated that concern. [Zylstra] was on very clear notice that [this] was an issue." Thus, the trial court acted within the bounds of its discretion.

Third, the court reached its conclusion through the exercise of reason—in deciding to strike the two affidavits, the court reasoned that: (1) definitive opinions for Drs. Epperson and Brzusek were submitted for the first time after the close of discovery and only in opposition to a summary judgment motion; (2) Zylstra knew he needed to supplement his expert-related responses prior to the close of discovery and the passage of the dispositive motions filing deadline; and, (3) no good cause existed for the delay. Specifically, the district court found that

13

Zylstra's pre-July 1, 2013 disclosures regarding Drs. Epperson and Brzusek were more properly categorized as general subject matter disclosures, not definitive opinions, as they were not stated to a reasonable degree of certainty and failed to contain factual or scientific support. Based upon this Court's review of the April 8, 2013 disclosures, the April 29, 2013 supplement to the same, Dr. Epperson's 2011 report, and the two affidavits at issue, the district court's findings are supported by the record.

BSU served timely and straightforward discovery requests on Zylstra, and the district court provided clear guidance regarding Zylstra's need to respond to the same at the May 9, 2013 hearing on BSU's motion to compel. Rule 26(b) requires more than placing an opponent "on notice" of what your expert is "likely" to testify to "if asked" his opinion. Almost all of the arguments advanced by Zylstra to the district court and to this Court on appeal reveal Zylstra's fundamental misunderstanding regarding his burden of proving each element of the negligence claim he brought against BSU. The district court attempted to point this out, advising Zylstra that BSU did not have an affirmative duty to develop the opinions of Zylstra's experts through depositions or other written discovery tools.[6] The district court found BSU's expert-related discovery requests to be legitimate and deserving of complete and timely responses. Zylstra had the burden of timely establishing those opinions and theories, and the factual and scientific bases of the same, so that BSU had a reasonable opportunity to challenge, test, and respond to said opinions prior to the dispositive motions filing deadline and trial. Zylstra's argument on appeal regarding his belief that BSU would file an additional motion to compel prior to filing a summary judgment motion (and related motion to strike) again improperly shifts this burden of production. Zylstra was on clear notice of his need to fully respond to BSU's expert-related discovery requests prior to the close of discovery. The burden to provide all of the information BSU requested for each of Zylstra's experts rested on Zylstra's shoulders alone.

---

[6] At the October 10, 2013 hearing on Zylstra's motion for reconsideration, in response to arguments from Zylstra's counsel that BSU could have deposed Zylstra's experts if BSU had any question as to their opinions, the district court stated:

> So -- and it also concerned me because the other reason that was given was that, well, [BSU] could have deposed the experts. Well, what would [BSU] depose them on? I agree with counsel [for BSU]. What would [they] depose? It's a fishing expedition[.] There's nothing there to tell them what they should be d[e]sposing. And they're not required to depose. Not required. The burden's on the plaintiff.

14

Furthermore, this Court holds that the district court properly considered and rejected Zylstra's arguments regarding an alleged scheduling misunderstanding, "an implicit agreement" between the parties to extend discovery, and alleged technical difficulties with recording equipment during the motion to compel hearing. These arguments are specious. The record is devoid of any indicia of unfinished business or technical recording difficulties, most notably any unnatural breaks or awkward pauses in the flow of conversation. To the contrary, the hearing at issue concluded, as expected, with Zylstra's counsel timely announcing, "Goodbye."

For all of these reasons, the district court did not err in striking the affidavits of Zylstra's proposed experts, Drs. Epperson and Brzusek. As such, the decision to strike the affidavits is affirmed. Further, Zylstra does not appear to contest that, without the support of affidavits from his experts, the district court's grant of summary judgment against him on the issue of causation was proper.

**B.      The Issue of Judicial Bias Was Not Preserved for Appeal.**

On appeal, Zylstra argues that the district court judge failed to be impartial and disinterested in the outcome of the case and that this alleged bias warrants reversal. However, Zylstra never entered an objection or filed a motion for disqualification during the pre-trial proceedings. In the absence of a motion for disqualification, this Court will not review this issue on appeal. *See, e.g., McPheters v. Maile,* 138 Idaho 391, 396–97, 64 P.3d 317, 322–23 (2003) (declining to review the issue of disqualification where no motion to disqualify was found in the record); *Minor Miracle Prods., LLC v. Starkey*, 152 Idaho 333, 337, 271 P.3d 1189, 1193 (2012) (citing *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 563, 568, 249 P.3d 362, 367 (2011)). "As we noted in *Doe,* '[b]ecause the question of a recusal under I.R.C.P. 40(d)(2) is committed to the discretion of the trial judge, absent some objection at trial, there was no decision by the trial court that can be reviewed and no factual record was developed from which grounds for disqualification can be discerned.'" *Minor Miracle*, 152 Idaho at 337, 271 P.3d at 1193 (quoting *Doe*, 150 Idaho at 568, 249 P.3d at 367)). Such is the case here. We therefore decline to reach the merits of this issue on appeal.

**C.      The Issue Raised by BSU on Cross-Appeal Need Not Be Addressed.**

The district court denied summary judgment to BSU on the issue of whether Zylstra should be time-barred from prosecuting the lawsuit. The district court found that Dr. Epperson's December 2011 report and the lay witness affidavits provided by Zylstra's friends and family

15

created disputed issues of fact as to Zylstra's competency and ability to function, including timely filing a lawsuit, following the incident, thus precluding summary judgment on the issue. Given that BSU prevailed on the issue of causation, which triggered dismissal of the entire case, it appears that this cross-appeal was submitted primarily as a defensive measure. Because the statute of limitations issue is moot in the absence of BSU liability, we decline to reach the merits of the cross-appeal in this opinion. *McLean v. Maverik Country Stores, Inc*., 142 Idaho 810, 815, 135 P.3d 756, 761 (2006) ("[Maverik] also cross-appealed, contending that the district court erred in overruling objections to evidence offered by the Plaintiffs in opposition to [Maverik's] motion for summary judgment. Our ruling upholding that grant of summary judgment renders the issues raised in the cross-appeal moot."); *Staggie v. Idaho Falls Consol. Hosps., Inc*., 110 Idaho 349, 351 n.1, 715 P.2d 1019, 1021 n.1 (Ct. App. 1986) ("As a defensive measure, the hospital cross-appealed from that part of the judgment dismissing the third-party complaint against [the third-party defendant]. Because the third-party complaint is moot in the absence of hospital liability, we need not address the cross-appeal in this opinion.").

## VI. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal are awarded to BSU.

Chief Justice BURDICK, Justices EISMANN, J. JONES and HORTON CONCUR.